Argued and submitted July 2, 2012, in A142268, reversed and remanded, in A142301, affirmed January 9, 2013

PIH BEAVERTON, LLC,
*Plaintiff-Appellant,*

*v.*

SUPER ONE, INC.;
Gary Thompson,
dba Portland Plastering Company;
Michael Alford Eskew;
David Lee Eskew;
Eskew & Eskew, dba Eskew Roofing;
Wood Mechanix, Inc.;
and T. T. & L. Sheet Metal, Inc.,
*Defendants-Respondents,*

*and*

DOES 1 THROUGH 8;
Eskew Contracting, Inc.;
Dan Rima, dba Dan Rima Construction;
and Does 1 and 2,
*Defendants.*

SUPER ONE, INC.,
*Third-Party Plaintiff,*

*v.*

Dan RIMA,
dba Dan Rima Construction;
Eskew Contracting, Inc.;
T. T. & L. Sheet Metal, Inc.;
Sto Corp;
Rose City Buiding Supply,
an assumed business name of L & W Supply Corp.;
Wood Mechanix, Inc.;
Demian Dawson, dba Spectra Caulking;
VIP's Motor Inns, Inc.;
David Eskew;
and Michael Eskew, dba Eskew Roofing,
*Third-Party Defendants.*

Washington County Circuit Court
C072107CV; A142268 (Control)

PIH BEAVERTON, LLC,
a Delaware limited liability company,
*Plaintiff*,

*v.*

SUPER ONE, INC.,
an Oregon corporation;
Gary Thompson, dba Portland Plastering Company;
DOES 1 through 8;
Eskew Contracting, Inc.,
an Oregon corporation;
Dan Rima, dba Dan Rima Construction;
Wood Mechanix, Inc.,
an Oregon corporation;
Demian Dawson, dba Spectra Caulking;
T. T. & L. Sheet Metal, Inc.;
Does 1 and 2;
Michael Alford Eskew;
David Lee Eskew;
Eskew & Eskew, dba Eskew Roofing;
*Defendants*.

SUPER ONE, INC.,
an Oregon corporation,
*Third-Party Plaintiff-Appellant*,

*v.*

Dan RIMA,
dba Dan Rima Construction,
an individual;
Eskew Contracting, Inc.,
an Oregon corporation;
T. T. & L. Sheet Metal, Inc.,
an Oregon corporation;
Sto Corp, a foreign corporation;
Rose City Building Supply,
an assumed business name of L & W Supply Corp.,
an Oregon corporation;
Demian Dawson, dba Spectra Caulking, an individual;
VIP's Motor Inns, Inc.,
an Oregon corporation;
David Eskew;
and Michael Eskew, dba Eskew Roofing,
*Third-Party Defendants*,

*and*

WOOD MECHANIX, INC.,
an Oregon corporation;
and Gary Thompson, dba Portland Plastering Company,
*Third-Party Defendants-Respondents.*

Washington County Circuit Court
C072107CV; A142301

294 P3d 536

In A142268, Dwain M. Clifford argued the cause for appellant. With him on the briefs were Daniel R. Webert and Ball Janik LLP.

In A142268, Chin See Ming argued the cause for respondent Super One, Inc. With him on the brief were Jack Levy and Smith Freed & Eberhard P.C.

In A142268, Jonathan Henderson argued the cause for respondents Michael Alford Eskew, David Lee Eskew, Eskew & Eskew, and Wood Mechanix, Inc. With him on the brief was Davis Rothwell Earle & Xochihua P.C.

In A142268, Michael T. Stone filed the brief for respondent T. T. & L. Sheet Metal, Inc.

In A142268, Norma S. Ninomiya and Law Offices of Andersen & Nyburg for respondent Gary Thompson joined the briefs of respondents Super One, Inc., Michael Alford Eskew, David Lee Eskew, Eskew & Eskew, Wood Mechanix, Inc., and T. T. & L. Sheet Metal, Inc.

In A142301, Chin See Ming argued the cause for appellant. With him on the brief were Jack Levy and Smith Freed & Eberhard, PC.

In A142301, Norma S. Ninomiya argued the cause for respondent Gary Thompson. With her on the brief were Law Offices of Andersen & Nyburg.

In A142301, Jonathan W. Henderson argued the cause for respondent Wood Mechanix, Inc. With him on the brief were Elizabeth E. Lampson and Davis Rothwell Earle & Xochihua P.C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

These consolidated cases involve claims related to the allegedly negligent construction of a hotel. Plaintiff PIH Beaverton, the current owner of the hotel, brought a negligent-construction claim against Super One, a general contractor, and various subcontractors (collectively, "defendants"). Super One, in turn, sought indemnity from two subcontractors: (1) Gary Thompson dba Portland Plastering Company (Portland Plastering), via a cross-claim, and (2) Wood Mechanix, Inc., via third-party claims.[1] Defendants moved for summary judgment against plaintiff's negligence claim, and the trial court granted those motions on the ground that plaintiff's claim was time barred because it was brought after the 10-year ultimate repose period set forth in ORS 12.135. We discuss plaintiff's appeal from that decision (A142268) in the first section of this opinion, below. Wood Mechanix and Portland Plastering then moved to dismiss Super One's claims for contractual indemnity. In granting that motion, the trial court agreed with the subcontractors' argument that Super One's indemnity claims also were time-barred under ORS 12.135. We discuss Super One's appeal from that decision (A142301) in the second section of this opinion.[2]

In the end, we conclude that the trial court erred when it granted summary judgment to defendants on the ground that plaintiff's negligent construction claim was time-barred. Accordingly, we reverse the trial court's grant of summary judgment to defendants and remand for further proceedings. We reach a different conclusion, however, with respect to the trial court's dismissal of defendant Super One's indemnity claims against Wood Mechanix and Portland Plastering. We affirm that aspect of the trial court's judgment.

[1] Super One's "Cross-Claim and Third-Party Complaint" alleged additional third-party claims against various other subcontractors that are not subject to the appeals considered in this opinion. After Super One filed those claims, plaintiff amended its complaint to join Wood Mechanix, and others, as defendants to plaintiff's negligence claim.

[2] The trial court's rulings on all of the motions discussed in this opinion were reflected in a single general judgment entered on April 29, 2009. Plaintiff and Super One filed separate notices of appeal from that general judgment, and we have consolidated the two appeals on our own motion.

PLAINTIFF'S APPEAL FROM SUMMARY JUDGMENT
IN DEFENDANTS' FAVOR ON PLAINTIFF'S
NEGLIGENT CONSTRUCTION CLAIM
(A142268)

As noted above, the trial court granted summary judgment to defendants on the ground that plaintiff's negligent construction claim was time barred. On appeal, plaintiff argues that the trial court erred in concluding that the claim is barred by ORS 12.135(1) (2007),[3] a statute of ultimate repose. Defendants contend that the trial court's ruling was correct and alternatively argue that, if ORS 12.135(1) does not bar plaintiff's claim, ORS 12.115 does. We agree with the trial court that ORS 12.135(1) is the applicable statute. Unlike the trial court, however, we conclude that evidence in the record creates a genuine issue of material fact that precludes summary judgment in defendants' favor.

"On review of a trial court's grant of summary judgment, we view the record in the light most favorable to the party opposing summary judgment to determine whether there is any genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Pincetich v. Nolan*, 252 Or App 42, 46, 285 P3d 759 (2012). In this case, there is no dispute about the majority of the historical facts. Rather, the parties' arguments relate primarily to the proper interpretation of ORS 12.135(1) and whether the facts on summary judgment establish, as a matter of law, that plaintiff's action was untimely under that statute.

The facts, described in the light most favorable to plaintiff, are as follows: In December, 1995, VIP's Industries, Inc., and VIP's Motor Inns, Inc.,[4] contracted with defendant Super One, a general contractor, to build a hotel and perform certain related site work. Super One engaged

---

[3] Pertinent subsections of ORS 12.135, including subsection (1), were amended in 2009. Or Laws 2009, ch 715, § 1. The 2009 amendments do not apply to this case, however, as plaintiff's cause of action arose before the amendments became effective on January 1, 2010. Or Laws 2009, ch 715, § 3. All references to ORS 12.135 in this opinion are to the pre-2009 version (as last amended in 1991).

[4] Unless otherwise specified, we refer to VIP's Industries, Inc., and VIP's Motor Inns, Inc., collectively as "VIP's."

the remaining defendants, as subcontractors, to perform specific aspects of the construction. On February 13, 1997, VIP's filed a "Notice of Completion" of the hotel pursuant to ORS 87.045, a statute related to the filing of construction liens.[5] Also on February 13, 1997, Washington County issued a certificate for "Temporary Occupancy from 2/13/97-3/3/97" for the hotel. According to Steven Johnson, the then-president of VIP's Motor Inns, Inc., posting and recording a notice of completion was always done "as a routine matter when a hotel was about to open." He explained that VIP's sometimes "might even take possession of the property under a temporary certificate of occupancy" before the property was fully complete. Here, the parties agree that VIP's did, in fact, begin accepting guests and operating the hotel on or around February 13, 1997.

Regarding the status of the hotel's construction in early 1997, Johnson testified that he did not "have an independent recollection of exact dates," but said that he did "not believe [defendants] had completed their work as of [February 13]." Johnson asserted that he knew that "construction efforts and work by Super One on the job site" continued even after the contractors had submitted all pay applications "because work just needed to be done. Things needed to be completed." Johnson further testified that he specifically recalled "there being quite a bit of work to be done between ourselves in order to * * * complete the project." When asked if particular contractors had performed work after February 13, 1997, Johnson testified that he knew "for a fact" that Super One had. He explained further:

"To the best of my recollection, specifically, there was work to do at the back of the property having to do with storm drainage and wetlands * * * [n]ot after the building itself was completed[,] * * * [but] after we took possession and occupied and opened for business."

Johnson did not "have a specific recollection of individual items as to the structure," as opposed to the storm-drainage and wetlands work, that were left to be done after February 13, 1997, but reiterated that the company's "typical practice

---

[5] Such a "Notice of Completion," when filed pursuant to ORS 87.045, triggers the 75-day period under ORS 87.035 within which potential lien claimants may perfect any construction liens.

and experience was to have quite a bit of work still left to do" after the initial occupancy, given that it "usually pushed very, very, hard to get into possession and open for business as soon as possible."

Johnson also filed a declaration commenting on when he would have considered the hotel to be complete. Specifically, Johnson declared:

> "To the best of my recollection, I did not provide written acceptance of Super One's work under the terms of the Construction Contract, nor do I recall that the project architect, Charles Hagel, provided a Certificate of Substantial Completion.[6] I considered construction of the Hotel by Super One to be complete once all Washington County approvals were obtained, a final certificate of occupancy issued, and Super One completed all work required under the contract for construction of the Hotel."

The architect for the hotel similarly declared that he "considered construction of the Hotel to be complete when the appropriate government permitting authority issued a final Certificate of Occupancy." Washington County issued a "Notice of Completion of Final Inspection Requirements and Certificate of Occupancy" for the hotel on September 24, 1997.

Plaintiff purchased the hotel from VIP's in 2006. Soon after that purchase, plaintiff allegedly discovered multiple, significant construction defects with the "[b]uilding's envelope and other components," resulting in "water intrusion and property damage to, among other things, the siding, sheathing, framing and trim on the

---

[6] In contracting for the hotel construction, VIP's and Super One used a modified American Institute of Architects (AIA) Document A111 contract. That contract included provisions for determining the date of "Substantial Completion" and directed the architect to prepare a "Certificate of Substantial Completion" when, upon inspection, the architect determined that the work or designated portion thereof was substantially complete. The contract further provided that the completed Certificate of Substantial Completion would "be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate." Both the contract and the standard "Certificate of Substantial Completion" (also an AIA form) provide that "Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use." The parties agree that no Certificate of Substantial Completion ever was prepared for the hotel.

Building." Plaintiff filed suit for negligent construction against defendants on May 23, 2007—more than 10 years after VIP's filed the February 13, 1997, "Notice of Completion" under ORS 87.045, but less than 10 years after September 24, 1997, when Washington County issued its final notice of completion and certificate of occupancy.

Defendants moved for summary judgment, arguing that plaintiff's claims were barred either by ORS 12.115(1) or by ORS 12.135(1). The former statute provides:

"In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

ORS 12.115(1). The latter statute provides, as relevant, that

"[a]n action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property * * * shall be commenced within 10 years from *substantial completion* or abandonment of such construction, alteration or repair of the improvement to real property.

"* * * * *

"(3) For purposes of this section, 'substantial completion' means the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee."

ORS 12.135 (emphasis added).

The trial court granted defendants' motion based on ORS 12.135(1). In doing so, the court rejected defendants' argument that the February 13, 1997, "Notice of Completion" constituted a "written acceptance" under ORS 12.135(3) that, standing alone, would be sufficient to trigger the ultimate-repose period. The court reasoned, however, that the existence of that notice, in combination with select terms

of the construction contract, VIP's undisputed occupancy and use of the hotel on or about February 13, 1997, and a "lack of any specific evidence of work performed after [that date] by any of the defendants on any of the structures that are the subject of the claims in this lawsuit," meant that the project was, in fact, substantially completed by February 13, 1997, and that the repose period therefore began to run on that date.

On appeal, plaintiff argues that the trial court erred in applying ORS 12.135(1). It contends that, under a proper application of the statute, a genuine issue of material fact exists regarding the date on which the ultimate-repose period began to run. Defendants urge us to uphold the trial court's decision under ORS 12.135(1) (although they do not wholly endorse the trial court's reasoning) and alternatively argue that, if ORS 12.135(1) does not bar plaintiff's claim, ORS 12.115 does.

As an initial matter, we agree with the trial court that ORS 12.135(1) is the ultimate-repose statute that applies to plaintiff's claim for negligent construction. That statute applies specifically to claims against a person arising from that person's construction of an improvement to real property "whether in contract, tort or otherwise." "Accordingly, it controls over the more general negligence provision of ORS 12.115." *Sunset Presbyterian Church v. Brockamp & Jaeger*, 254 Or App 24, 31, 295 P3d 62 (2012). The remaining question, then, is whether the trial court properly applied ORS 12.135(1).

As noted, ORS 12.135(1) bars claims arising from the construction of an improvement to real property that are filed more than 10 years after the "substantial completion" of the construction. Unlike some other statutes that also refer to "substantial completion" but do not define the term, ORS 12.135 includes a definition.[7] Because that statutory definition of "substantial completion" is key to our decision in this case, we quote it again here:

---

[7] ORS 87.045 is one of the statutes that incorporate the idea of "substantial completion" without defining that term. *See* ORS 87.045(1) (describing several ways in which "completion of construction of an improvement shall occur," including when the improvement "is substantially complete").

"For purposes of this section, 'substantial completion' means the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee."

ORS 12.135(3).

That definition has two parts. Under the first clause of subsection (3), "substantial completion" occurs—and the ultimate-repose period in ORS 12.135(1) begins to run—on "the date when the contractee *accepts in writing* the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose[.]" ORS 12.135(3) (emphasis added). Thus, that first part of the definition contemplates that a construction project may be "substantially completed" before it is *finally* completed. Importantly, however, no matter how much work has been done on an improvement to real property, that improvement will be considered "substantially complete" under the first clause of ORS 12.135(3) only if the contractee has *accepted in writing* that it has "reached that state of completion when it may be used or occupied for its intended purpose."

In the absence of that kind of "written acceptance," the second clause of ORS 12.135(3) applies. It dictates that substantial completion will be deemed to occur on the date of the contractee's "acceptance of the completed construction, alteration or repair of such improvement." Significantly—and in contrast to the first clause—that second part of the ORS 12.135(3) definition does not incorporate any notion of less-than-total completion. Rather, it somewhat counterintuitively defines "substantial completion" in terms of the contractee accepting construction of an improvement to real property, or any designated portion thereof, that actually has been "completed."[8]

---

[8] "[S]uch improvement," as used in the second clause of ORS 12.135(3), simply refers back to the phrase "the improvement to real property or any designated

On appeal, defendants renew their argument that plaintiff's claims are time barred under the first, "written acceptance," clause of ORS 12.135(3). They contend that VIP's filing of the February 13, 1997, notice of completion constituted a qualifying "written acceptance." We, like the trial court, reject that argument. The February 13 notice of completion states, in part, that "notice is hereby given that the building, structure and other improvements, including site improvements on [the hotel] have been completed." It goes on to notify all persons claiming a construction lien on the property that they should "file a claim as required by ORS 87.035." That notice simply echoes the statutory requirements for notices posted to trigger the 75-day period for perfecting construction liens. Nothing about it purports to constitute "acceptance" of an improvement to real property. And even if the notice could be viewed as an acceptance of *something*, it would not necessarily be an acceptance that the hotel project was sufficiently complete to "be used or occupied for its intended purpose," as the first clause of ORS 12.135(3) requires. *See Dallas LBR. & Supply v. Phillips*, 249 Or 58, 59-60, 436 P2d 739 (1968) (noting that an ORS 87.045 notice did not establish the date of "substantial completion," where the notice was filed by an employee of the mortgagee who had no "knowledge or information at all about the completion of the house"). In short, we agree with the trial court that filing a notice under ORS 87.045 "does not necessarily equal substantial completion for purposes of starting the statute of [ultimate repose] for bringing a construction defect suit." The trial court ruled correctly that defendants were not entitled to summary judgment on their theory that plaintiff's action was time-barred under the first clause of ORS 12.135(3).

---

portion thereof" in the first clause of that subsection. We reject defendants' contention that the phrase "such improvement" means an improvement "having reached that state of completion when it may be used or occupied for its intended purpose," as described in the first clause of ORS 12.135(3). That interpretation is at odds with the statutory text. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (we determine the meaning of a statute from the text, context, and useful legislative history of the provision). The portion of the first clause on which defendants rely, beginning with "as having," does not describe "the improvement," but instead modifies the verb form of "accepts," by describing the sort of acceptance that triggers "substantial completion" under the first part of ORS 12.135(3).

We part with the trial court's reasoning, however, with respect to the second clause of that statute, which provides that, absent "written acceptance" under the first clause, substantial completion occurs on "the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee." ORS 12.135(3). The trial court determined that February 13, 1997, was "the date of acceptance of the completed construction" for purposes of that clause. In reaching that conclusion, the trial court relied largely on the notice of completion discussed above, the evidence that VIP's occupied and utilized the hotel on February 13, 1997, and the construction contract, which defined "substantial completion," for purposes of *its* provisions, as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use."

We do not view those considerations as establishing, as a matter of law, that plaintiff had accepted the "completed" improvement to real property on February 13, 1997, for purposes of the second clause of ORS 12.135(3). As explained above, the second clause of subsection (3) does not relate to the date on which an improvement can be occupied or utilized for its intended purpose, as the first clause does. Instead, the second clause references the date on which the contractee "accepts" the construction as "completed." ORS 12.135(3). "Complete," as relevant here, means "possessing all necessary parts, items, components or elements : not lacking anything necessary : ENTIRE, PERFECT," or "brought to an end or to a final or intended condition * * * : CONCLUDED, COMPLETED," *Webster's Third New Int'l Dictionary* 465 (unabridged ed 2002), and thus does not encompass the incomplete. In short, a consideration of the text shows that the second clause of ORS 12.135(3) applies only when a contractee has accepted construction that *actually* has been completed. That interpretation is consistent with the legislative history establishing that the point of completion is reached, for purposes of the second clause of ORS 12.135(3), "when the contractee takes from the contractor responsibility for the maintenance, alteration, and repair of the improvement, which typically, if not invariably,

will be the point at which little or no work remains to be done by the contractor." *Sunset Presbyterian Church*, 254 Or App at 34. Thus, it is possible that a contractee might not accept construction of an improvement to real property as having been "completed" (for purposes of the second clause of ORS 12.135(3)) until some time after the date on which the contractee occupied the improvement or otherwise started utilizing the improvement for its intended purpose (and the project would have been considered "substantially complete" under the first clause of ORS 12.135(3) if the contractee had provided the required "written acceptance").

Indeed, this record includes evidence suggesting both that work on the project was not completed until sometime after the date on which VIP's occupied the hotel and that VIP's did not accept the construction as completed until that later time. That evidence includes Johnson's testimony that storm-drainage and wetlands work remained to be done after VIP's took possession and opened the hotel for business, as well as his testimony that he did not consider the hotel to be complete until all "Washington County approvals were obtained, a final certificate of occupancy issued, and Super One completed all work required under the contract for construction of the Hotel." The record also reflects that Washington County did not issue its "Notice of Completion of Final Inspection Requirements and Certificate of Occupancy" for the hotel until September 24, 1997—over seven months after VIP's' initial occupancy. A factfinder could infer from that evidence that VIP's would not have accepted the construction as completed until the remaining work was finished and final approvals obtained.

The terms of the construction contract between VIP's and the general contractor (Super One) also could support a finding that VIP's did not accept the improvement as "completed" until sometime after it occupied the hotel, as the contract distinguishes between "substantial completion" and "final completion." First, the contract required the contractor to prepare and submit a "comprehensive list of items to be completed or corrected" upon substantial completion of "the Work." In other words, the contract

contemplated that "substantial completion"—as that term was used in the contract (not in ORS 12.135(3))—could occur when some work still remained to be done. The contract then discussed "final completion and final payment" in terms of a *subsequent* post-inspection date on which the architect would approve the construction as having been "completed in accordance with terms and conditions of the Contract." Thus, the contract terms, too, could support a determination that VIP's' occupancy of the hotel on February 13, 1997, did not equate to VIP's' having accepted the construction as "completed" on that date.

We conclude that the evidence outlined above raises a genuine issue of material fact as to whether VIP's' "acceptance of the completed construction" of the improvement to real property occurred on February 13, 1997, as the trial court found, or some time after May 23, 1997—and thus within 10 years of the date on which plaintiff's complaint was filed. ORS 12.135(1), (3). Accordingly, the trial court erred in granting defendants' motion for summary judgment on plaintiff's negligent construction claim.

## SUPER ONE'S APPEAL FROM JUDGMENT IN FAVOR OF PORTLAND PLASTERING AND WOOD MECHANIX ON SUPER ONE'S INDEMNITY CLAIMS
### (A142301)

As explained above, after plaintiff filed its negligent construction suit against Super One on May 23, 2007, Super One filed a cross-claim against Portland Plastering and a third-party claim against Wood Mechanix for, among other things, contractual indemnity for Super One's defense costs and liability to plaintiff.[9] Portland Plastering and Wood Mechanix both moved to dismiss, arguing to the trial court that Super One's indemnity claims were barred by the

---

[9] Super One's subcontracts with Portland Plastering and Wood Mechanix both contained the following indemnity clause:

"THE SUB-CONTRACTOR AGREES:

"* * * * *

"To indemnify the contractor against and save him harmless from all claims, loss, damage, injury, suits and liability arising out of or resulting directly or indirectly from performance of this Sub-Contract or work materials, or equipment covered hereby, whether relating to personal injury, death, property damage, actual or alleged violation of patent right or otherwise."

10-year ultimate repose period set forth in ORS 12.135(1). The trial court agreed, and it entered judgment dismissing all claims brought by Super One against Portland Plastering and Wood Mechanix.

On appeal, Super One concedes that its indemnity claims were not commenced within 10 years of the hotel's substantial completion. Nonetheless, it argues, those claims are not time barred because ORS 12.135(1) does not apply to indemnity claims as a matter of law. We conclude, to the contrary, that ORS 12.135(1) does apply to Super One's indemnity claims against the subcontractors. Accordingly, we affirm the trial court's dismissal of those claims.[10]

Again, ORS 12.135(1) provides:

"An action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced within 10 years from substantial completion or abandonment of such construction, alteration or repair of the improvement to real property."

We determine whether the legislature intended ORS 12.135(1) to apply to claims for indemnity by looking to the text, context, and useful legislative history of the provision. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Looking first to text, the statute contemplates that the ultimate repose period applies to *any* action "arising from" certain construction-related activities, regardless

---

[10] Super One's concession that the hotel project was substantially completed more than 10 years before it filed its indemnity claims may be related to its argument that plaintiff's negligent construction claim against Super One and other defendants was time-barred. However, Super One has not argued that a reversal of the summary judgment in its favor on plaintiff's negligent construction claim somehow should lead to a reversal of the trial court's dismissal of Super One's indemnity claims as untimely. (Nor do we perceive why such a result would follow, given Super One's unqualified concession.) Rather, Super One has confined its appeal to a single question: whether the ultimate repose period set forth in ORS 12.135(1) applies to indemnity claims. Accordingly, we likewise limit our analysis to that question.

of the legal theory that forms the basis for the action—that is the import of the phrase "whether in contract, tort or otherwise." The question posed by this appeal, then, is what it means for an action to "arise from" the construction-related activities described in ORS 12.135(1).[11]

The Supreme Court's decision in *Black v. Arizala,* 337 Or 250, 95 P3d 1109 (2004), provides a starting point for our analysis, as it explains the meaning of the phrase "action * * * arising from," albeit in a different context. In *Black,* the court looked to dictionary definitions as it considered the meaning of a contract's reference to actions "arising from" that contract:

> "The dictionary defines the verb 'arise' to include 'to originate from a specific source[,]' 'to come into being [,]' and 'to become operative[.]' *Webster's Third New Int'l Dictionary* 117 (unabridged ed 1993). The dictionary also explains that 'from' is 'used as a function word to indicate the source or original or moving force of something: as * * * (4) the place of origin, source, or derivation of a material or immaterial thing[.]' *Id.* at 913."

*Id.* at 267 (brackets in *Black*). Thus, the court concluded, an action "arises from" a contract if the contract is "the specific place of origin or the source of the legal action." *Id.*

The definitions cited by the Supreme Court in *Black* are equally helpful to our construction of ORS 12.135(1). Applying those definitions, we conclude that the phrase beginning with "arising from" and ending with "such improvement"—that is, the part of ORS 12.135(1) that describes certain construction-related activities—identifies the factual origins from which a legal action must derive for ORS 12.135(1) to apply to that action. Thus, the text of ORS 12.135 suggests that it applies to indemnity actions that, as in this case, ultimately derive from the indemnitor's allegedly defective performance of construction-related activities.

---

[11] We use the term "construction-related activities" as shorthand for that part of ORS 12.135(1) that refers to "the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or * * * furnish[ing] the design, planning, surveying, architectural or engineering services for such improvement."

Super One rejects that interpretation of the statute. It contends that its contractual indemnity claims against Portland Plastering and Wood Mechanix do not "arise from" those subcontractors' performance of any construction but, instead, "arise from" the indemnity provisions in the contracts between Super One and the subcontractors.

We are not persuaded by Super One's argument, which does not identify any meaningful distinction between a claim for contractual indemnity and any other claim that sounds in contract. "[I]ndemnity is a remedy, not a cause of action[,]" and "[t]he right to indemnity must be based on a legal theory of recovery which specifies the legal reason why one party is responsible to hold another party harmless." *Freeport Investment Co. v. R. A. Gray & Co.*, 94 Or App 648, 651, 767 P2d 83, *rev den*, 308 Or 33 (1989). When the right to indemnity is based on a contract, the terms of that contract identify when one party to the contract may have a claim against another. Here, the pertinent contracts provide that Portland Plastering and Wood Mechanix will indemnify Super One for "all claims, loss, damage, injury, suits and liability arising out of or resulting directly or indirectly from performance" of those contracts, which related to the performance of construction activities on the hotel project (for Portland Plastering, installation of an exterior insulation finish system (EIFS); for Wood Mechanix, framing and window installation). Thus, any contractual right to indemnity that Super One might have *necessarily* would arise from the subcontractors' performance of their contractual construction-related duties—that is, from "construction * * * of [an] improvement to real property" within the meaning of ORS 12.135(1). *Cf. So. Pac. Co. v. Morrison-Knudsen Co.*, 216 Or 398, 408, 338 P2d 665 (1959) (a contractual claim for indemnity "arises out of a liability flowing from the indemnitee's negligent conduct").

In arguing to the contrary, Super One relies heavily on *Huff v. Shiomi*, 73 Or App 605, 699 P2d 1178 (1985). Super One contends that, in that case, "this court recognized that an indemnity claim is different in kind from the underlying action from which the indemnity claim is derived, and thus not governed by the statute of repose

applicable to the underlying action." Super One reads too much into our limited discussion concerning the statute of repose that was at issue in *Huff*. In that case, we summarily concluded that ORS 30.905 (1983) amended by Or Laws 2009, ch 485, § 1, which prescribed the limitation and ultimate repose periods for "product liability civil action[s]," did not apply to a common-law indemnity claim that a defendant physician brought against the manufacturer of medication that the physician had prescribed to the plaintiff patient. Our unexplained conclusion may have been based on the statutory definition of a "product liability civil action" as "a civil action brought against a manufacturer, distributor, seller or lessor of a product *for damages for personal injury, death or property damages* arising out of [specified factual situations]." ORS 30.900 (emphasis added). The indemnity claim in *Huff* was not an "action * * * for damages for personal injury, death or property damages." Rather, the damages in that case would have been compensation for losses related to the physician's discharge of a common liability between the manufacturer and the physician. Consequently, the claim in *Huff* would not have qualified as a "product liability civil action" to which ORS 30.905 (1983) would have applied.

Turning to the case at bar, ORS 12.135(1), unlike ORS 30.905 (1983), does not tie the applicability of its repose provisions to claims for which the plaintiff seeks a certain type of damages. ORS 12.135(1) instead applies to *any* action, "in contract, tort, or otherwise," regardless of the type of damages sought, so long as the action arises out of the specified construction-related circumstances. In short, ORS 12.135(1) covers a broader range of actions than ORS 30.905 (1983), and *Huff* therefore does not control.

We also reject Super One's argument that the legislative history of ORS 12.135 weighs against a conclusion that the statute covers indemnity claims. In making that contention, Super One points out that nothing in the legislative history of the original 1971 enactment of ORS 12.135, nor in the 1983 amendments to that statute, evidences a legislative intent *not* to exclude indemnity claims from ORS 12.135(1). That argument overlooks the 1991 amendments to ORS 12.135, which resulted from that

year's Senate Bill 722. Or Laws 1991, ch 968 § 1. When SB 722 (1991) was first introduced, it contained a provision that, if enacted, would have added a new subsection to ORS 12.135 excluding from the statute's coverage "any action for contribution or indemnity arising out of an action brought pursuant to subsection (1) of this section, whether based in contract or tort." *See* Senate Judiciary Committee, SB 722, May 6, 1991, Exs B & C (amendments and hand engrossed bill). That revision was later stricken from the bill, and the language applying ORS 12.135 to any action "against a person, whether in contract, tort or otherwise" was retained. *Id.* That legislative history suggests that the legislature knew how to exempt indemnity actions from ORS 12.135(1), and chose not to do so.

Our construction of ORS 12.135(1) also is consistent with legislative intent to both "fix[ ] a starting date for applying the statutory time limits to actions against construction contractors[,]" *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 250, 611 P2d 1158 (1980), and—by establishing a 10-year repose period—"to provide an absolute cutoff date for the bringing of such actions." *Beals v. Breeden Bros., Inc.*, 113 Or App 566, 572, 833 P2d 348, *rev den*, 314 Or 727 (1992); *see also Shasta View Irrigation Dist. v. Amoco Chemicals*, 329 Or 151, 162, 986 P2d 536 (1999) (ultimate repose periods provide a "deadline for the initiation of an action whether or not the injury has been discovered or has even occurred," and "cannot be extended regardless of unfairness to the plaintiff" (internal quotation marks omitted)). As with other statutory periods of ultimate repose, the 10-year period in ORS 12.135(1) serves two purposes: (1) to avoid "the lack of reliability and availability of evidence after a lapse of long periods of time;" and (2) to allow people, "after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown liability." *Beals*, 113 Or App at 571 (internal quotation marks omitted). We perceive no reason why those rationales do not apply as strongly to general contractors' claims against subcontractors as they do to property owners' claims against general contractors, subcontractors, and anybody else who may have "performed the construction, alteration or repair of any improvement

to real property," supervised or inspected that work, or "furnished the design, planning, surveying, architectural or engineering services for such improvement[.]" ORS 12.135(1).

The considerations outlined above lead us to conclude that ORS 12.135(1) applies to indemnity actions that ultimately derive from the indemnitor's allegedly defective performance of construction-related activities. The statute thus applies to Super One's indemnity claims against Portland Plastering and Wood Mechanix. Super One has conceded that, if ORS 12.135(1) applies, its claims are time barred because they were filed "more than ten years after the hotel was substantially completed." Given that concession, we conclude that the trial court correctly dismissed Super One's indemnity claims against the subcontractors.[12]

In sum, we hold that the trial court erred in granting summary judgment to defendants on plaintiff's negligent construction claim. Accordingly, we reverse and remand the trial court's dismissal of that claim. We also conclude, however, that the trial court correctly entered judgment in favor of Portland Plastering and Wood Mechanix on Super One's indemnity claims. Accordingly, we affirm that aspect of the trial court's judgment.

In A142268, reversed and remanded. In A142301, affirmed.

---

[12] In light of that holding, we need not address Wood Mechanix's alternative argument that no indemnity obligation was triggered under the indemnity agreement.