No. 24 April 24, 2014 267

IN THE SUPREME COURT OF THE
STATE OF OREGON

PIH BEAVERTON, LLC,
*Respondent on Review,*

*v.*

SUPER ONE, INC.,
*Petitioner on Review,*

*and*

Gary THOMPSON,
dba Portland Plastering Company;
Michael Alford Eskew; David Lee Eskew;
Eskew & Eskew, dba Eskew Roofing;
Wood Mechanix, Inc.;
and T. T. & L Sheet Metal, Inc.,
*Defendants-Respondents,*

*and*

DOES 1 THROUGH 8;
Eskew Contracting, Inc.;
Dan Rima, dba Dan Rima Construction;
and Does 1 and 2,
*Defendants.*

SUPER ONE, INC.,
*Third-Party Plaintiff,*

*v.*

Dan RIMA,
dba Dan Rima Construction;
Eskew Contracting, Inc.; T. T. & L. Sheet Metal, Inc.;
STO Corp; Rose City Buiding Supply,
an assumed business name of L & W Supply Corp.;
Wood Mechanix, Inc.;
Demian Dawson, dba Spectra Caulking;
VIP's Motor Inns, Inc.; David Eskew;
and Michael Eskew, dba Eskew Roofing,
*Third-Party Defendants.*

PIH BEAVERTON, LLC,
a Delaware limited liability company,
*Plaintiff,*
*v.*

SUPER ONE, INC.,
an Oregon corporation;
Gary Thompson, dba Portland Plastering Company;
DOES 1 through 8; Eskew Contracting, Inc.,
an Oregon corporation;
Dan Rima, dba Dan Rima Construction;
Wood Mechanix, Inc., an Oregon corporation;
Demian Dawson, dba Spectra Caulking;
T. T. & L. Sheet Metal, Inc.; Does 1 and 2;
Michael Alford Eskew; David Lee Eskew;
and Eskew & Eskew, dba Eskew Roofing,
*Defendants.*

SUPER ONE, INC.,
an Oregon corporation,
*Petitioner on Review,*

*v.*

Dan RIMA,
dba Dan Rima Construction, an individual;
Eskew Contracting, Inc., an Oregon corporation;
T. T. & L. Sheet Metal, Inc., an Oregon corporation;
STO Corp, a foreign corporation;
Rose City Building Supply, an assumed business
name of L & W Supply Corp., an Oregon corporation;
Demian Dawson, dba Spectra Caulking, an individual;
VIP's Motor Inns, Inc., an Oregon corporation;
David Eskew;
and Michael Eskew, dba Eskew Roofing,
*Third-Party Defendants,*
*and*

WOOD MECHANIX, INC.,
an Oregon corporation;
and Gary Thompson, dba Portland Plastering Company,
*Respondents on Review.*

PIH BEAVERTON, LLC,
*Respondent on Review,*

*v.*

SUPER ONE, INC.;
Gary Thompson, dba Portland Plastering Company;
Michael Alford Eskew; David Lee Eskew;
Eskew & Eskew, dba Eskew Roofing;
and Wood Mechanix, Inc.,
*Defendants-Respondents,*

*and*

T. T. & L. SHEET METAL, INC.,
*Petitioner on Review,*

*and*

DOES 1 THROUGH 8;
Eskew Contracting, Inc.;
Dan Rima, dba Dan Rima Construction;
and Does 1 and 2,
*Defendants.*

SUPER ONE, INC.,
*Third-Party Plaintiff,*

*v.*

Dan RIMA,
dba Dan Rima Construction;
Eskew Contracting, Inc.;
T. T. & L. Sheet Metal, Inc.; STO Corp;
Rose City Buiding Supply, an assumed business
name of L & W Supply Corp.;
Wood Mechanix, Inc.;
Demian Dawson, dba Spectra Caulking;
VIP's Motor Inns, Inc.; David Eskew;
and Michael Eskew, dba Eskew Roofing,
*Third-Party Defendants.*

PIH BEAVERTON, LLC,
a Delaware limited liability company,
*Plaintiff,*

*v.*

SUPER ONE, INC.,
an Oregon corporation;
Gary Thompson, dba Portland Plastering Company;
Does 1 through 8;
Eskew Contracting, Inc., an Oregon corporation;
Dan Rima, dba Dan Rima Construction;
Wood Mechanix, Inc., an Oregon corporation;
Demian Dawson, dba Spectra Caulking;
T. T. & L. Sheet Metal, Inc.; Does 1 and 2;
Michael Alford Eskew; David Lee Eskew;
and Eskew & Eskew, dba Eskew Roofing;
*Defendants.*

SUPER ONE, INC.,
an Oregon corporation,
*Third-Party Plaintiff-Appellant,*

*v.*

Dan RIMA,
dba Dan Rima Construction, an individual;
Eskew Contracting, Inc., an Oregon corporation;
T. T. & L. Sheet Metal, Inc., an Oregon corporation;
STO Corp, a foreign corporation;
Rose City Building Supply, an assumed business
name of L & W Supply Corp., an Oregon corporation;
Demian Dawson, dba Spectra Caulking, an individual;
VIP's Motor Inns, Inc., an Oregon corporation;
David Eskew; and Michael Eskew, dba Eskew Roofing,
*Third-Party Defendants,*

*and*

WOOD MECHANIX, INC.,
an Oregon corporation;
and Gary Thompson,
dba Portland Plastering Company,
*Third-Party Defendants-Respondents.*

(CC C072107CV; CA A142268 (Control), A142301;
SC S061488 (Control), S061505)

On review from the Court of Appeals.*

_____

* Appeal from Washington County Circuit Court, Mark Gardner, Judge. 254 Or App 486, 294 P3d 536 (2013).

Argued and submitted January 13, 2014.

Jack Levy, Smith Freed & Eberhard, P.C., Portland, argued the cause and filed the briefs for petitioner on review Super One, Inc. With him on the brief was Chin See Ming.

Michael T. Stone, Brisbee & Stockton, LLC, Hillsboro, argued the cause for petitioner on review T. T. & L. Sheet, Metal, Inc.

Daniel T. Goldstein, Ball Janik, LLP, Portland, argued the cause and filed the briefs for respondent on review PIH Beaverton, LLC. With him on the brief were Phillip E. Joseph and James C. Prichard.

Michael J. Vial filed the brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

WALTERS, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**WALTERS, J.**

In this case, we consider the meaning of the term "substantial completion" as used in ORS 12.135, a statute of ultimate repose for claims arising from the construction, alteration, or repair of improvements to real property. We affirm the decision of the Court of Appeals and remand to the circuit court for further proceedings.

The following facts are taken from the record on summary judgment and are undisputed. Defendant general contractor Super One, Inc., and various subcontractors, including defendant subcontractor T. T. & L. Sheet Metal, Inc., contracted with VIP's Industries, Inc. and VIP's Motor Inns, Inc. (VIP's) to build a hotel.[1] Defendant general contractor and VIP's used a standard form contract supplied by the American Institute of Architects (AIA). Defendants began work in 1996. On February 13, 1997, VIP's posted a "completion notice" pursuant to ORS 87.045, a statute governing construction liens.[2] On or about that same date, VIP's also obtained a certificate for temporary occupancy and began accepting paying guests. However, a Certificate of Substantial Completion was not issued by the architect or accepted by VIP's as had been contemplated by the contract between the parties. After the date on which VIP's posted the completion notice, defendants continued to perform construction work. The county issued a certificate of final occupancy on September 24, 1997.

In 2006, plaintiff purchased the hotel and soon thereafter allegedly discovered damage. Plaintiff filed an action against defendants for negligence, nuisance, and trespass

---

[1] VIP's was the original owner of the hotel and is not party to this case.

[2] ORS 87.045 provides, in part:

"(1) The completion of construction of an improvement shall occur when:

"(a) The improvement is substantially complete;

"(b) A completion notice is posted and recorded as provided by subsections (2) and (3) of this section; or

"(c) The improvement is abandoned as provided by subsection (5) of this section.

"(2) When all original contractors employed on the construction of an improvement have substantially performed their contracts, any original contractor, the owner or mortgagee, or an agent of any of them may post and record a completion notice."

on May 23, 2007, a date that was more than 10 years after the posting of the completion notice but less than 10 years after the issuance of the certificate of final occupancy. Defendants moved for summary judgment, arguing that plaintiff's claims were barred by ORS 12.135,[3] which applies to claims arising from the construction, alteration, or repair of improvements to real property.[4] ORS 12.135(1) requires that such claims be commenced within the applicable statute of limitations, but in any event not later than 10 years from "substantial completion" or abandonment, whichever comes earlier. ORS 12.135(3) defines "substantial completion" to mean

> "the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee."

-----

[3] ORS 12.135 was amended in 2009 with an effective date of January 1, 2010. *See* Or Laws 2009, ch 715, §§ 1, 3. This action is governed by the 2007 provisions of ORS 12.135, and we therefore refer to that version of the statute.

ORS 12.135 (2007) provided, in part:

"(1) An action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof *** shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced within 10 years from substantial completion or abandonment of such construction, alteration or repair of the improvement to real property.

"*****

"(3) For purposes of this section, 'substantial completion' means the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee.

"(4) For the purposes of this section, an improvement to real property shall be considered abandoned on the same date that the improvement is considered abandoned under ORS 87.045."

[4] Defendants also argued that plaintiff's claim was barred by ORS 12.115. Before this court, defendants limited their argument to ORS 12.135, and we also confine our discussion to that statute.

Defendants argued that "substantial completion" occurred on February 13, 1997, when VIP's either accepted the construction in writing by posting the completion notice or demonstrated acceptance of the construction by opening its doors to the public. Plaintiff responded that a completion notice pursuant to ORS 87.045 is not a written acceptance of construction sufficient to satisfy the requirements of ORS 12.135 and that the 10-year period of ultimate repose did not begin to run until VIP's accepted "completed" construction of the hotel.

The trial court accepted defendants' argument that, because the hotel was open for business by February 13, 1997, "substantial completion" occurred on that date and plaintiff's claims were time-barred. Plaintiff appealed, and the Court of Appeals reversed. *PIH Beaverton, LLC v. Super One, Inc.*, 254 Or App 486, 294 P3d 536 (2013). Like the trial court, the Court of Appeals rejected defendants' argument that the notice of completion posted by VIP's pursuant to ORS 87.035 satisfied the requirements for written acceptance in ORS 12.135(3). However, unlike the trial court, the Court of Appeals also rejected defendants' argument that "substantial completion" occurred when VIP's opened for business. The court reasoned that, in the absence of written acceptance, ORS 12.135(3) requires evidence that the owner accepted the construction as fully completed. Because the evidence adduced on summary judgment indicated that construction was not fully complete on February 13, 1997, but continued thereafter, the Court of Appeals held that the trial court had erred in granting summary judgment. 254 Or App at 500.

Defendants petitioned for review, which this court granted to decide two legal questions presented by defendants' motions for summary judgment:

1. When a constructed facility is opened for business, does the owner's written completion notice pursuant to ORS 87.045 demonstrate written acceptance of construction sufficient to satisfy ORS 12.135(3)?

2. If there is no written acceptance that satisfies ORS 12.135(3), must a defendant that seeks the benefit of the 10-year limitations period demonstrate that the owner

accepted the construction as fully complete, or is evidence that the owner accepted the construction as sufficiently complete for its intended use or occupancy sufficient?[5]

In reviewing a trial court's disposition of a motion for summary judgment, this court determines whether the moving party is entitled to judgment as a matter of law. ORCP 47 C.

## COMPLETION NOTICE AS ACCEPTANCE OF CONSTRUCTION

The first question presented focuses on the first clause of ORS 12.135(3), which defines "substantial completion" to include "the date when the contractee accepts in writing the construction *** as having reached that state of completion when it may be used or occupied for its intended purpose." Defendants contend that when VIP's posted a completion notice pursuant to ORS 87.045, that notice, combined with the fact that VIP's was open for business on that date, constituted acceptance of the construction sufficient to satisfy the requirements of ORS 12.135. To analyze that argument, we must consider the text of both statutes.

ORS 87.010 grants those who perform labor, furnish transportation or material, or rent equipment used in the construction of an improvement a lien on the improvement for their labor, material, or services.[6] To perfect such a lien, the person claiming the lien must act not later than 75 days after the person has ceased to provide labor, material, or services, or 75 days after "completion of construction," whichever is earlier.[7] ORS 87.045(1) provides that "completion of

_____

[5] The second question also is presented in *Sunset Presbyterian Church v. Brockamp & Jaeger, Inc.*, 355 Or 286, ___ P3d ___ (2014).

[6] ORS 87.010(1) provides:

"Any person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement shall have a lien upon the improvement for the labor, transportation or material furnished or equipment rented at the instance of the owner of the improvement or the construction agent of the owner."

[7] ORS 87.035 provides, in part:

"(1) Every person claiming a lien created under ORS 87.010 (1) or (2) shall perfect the lien not later than 75 days after the person has ceased to provide labor, rent equipment or furnish materials or 75 days after completion of construction, whichever is earlier. Every other person claiming a lien created under ORS 87.010 shall perfect the lien not later than 75 days after

construction" occurs when any one of three events occurs: (1) the construction is "substantially complete," (2) "a completion notice is posted and recorded," or (3) the construction is "abandoned."

A completion notice may be filed once "all original contractors employed on the construction of an improvement have substantially performed their contracts." Any "original contractor [or] the owner" may post and record such notice. ORS 87.045(2). That notice "shall state in substance [that] *** [n]otice hereby is given that the building, structure or other improvement on the following described premises *** has been completed" and shall thus notify "[a]ll persons claiming a lien upon the same under the Construction Lien Law *** to file a claim of lien as required by ORS 87.035." *Id*.

Thus, an owner's posting of a completion notice pursuant to ORS 87.045 demonstrates that the owner has concluded that all original contractors have substantially performed their contracts and has stated, in writing, that "the building, structure, or other improvement" located at the described property "has been completed." The question remains, however, whether an owner's posting of such notice demonstrates that the owner has "accept[ed]" the construction as "having reached that state of completion when it may be used or occupied for its intended purpose." ORS 12.135(3).

"Accept" or "acceptance" when used in a legal sense has a well-defined meaning. In 1971, the relevant edition of *Black's Law Dictionary* defined "acceptance" as

"[T]he taking and receiving of anything in good part ***. The act of a person to whom a thing is offered or tendered by another, whereby he receives the thing with the intention of retaining it, such intention being evidenced by a sufficient act."

*Black's Law Dictionary* 27 (4th ed 1957) (originally published 1951).

---

the completion of construction. All liens claimed shall be perfected as provided by subsections (2) to (4) of this section.

"(2) A lien created under ORS 87.010 shall be perfected by filing a claim of lien with the recording officer of the county or counties in which the improvement, or some part thereof, is situated."

We think it likely that the legislature used "acceptance" in that legal sense, because it used it in conjunction with the legal term "contractee" and because, as we will explain, the legislative history supports that interpretation. However, even if the legislature used "accepts" or "acceptance" in its lay sense, the ordinary meaning of those terms is not far different. The dictionary definition of "acceptance" refers to the "act of accepting," which is in turn defined as the participial form of "accept"; the relevant definition of "accept," according to *Webster's*, is "to receive with consent." *Webster's Third New Int'l Dictionary* 10 (unabridged ed 1971) (originally published 1961). Thus, we conclude that, by using those terms, the legislature intended to describe the date when a contractee receives the construction and consents or assents to it as sufficiently complete for its intended use or occupancy.

Our review of the legislative history of the bill that became ORS 12.135, House Bill (HB) 1259, provides an explanation for the legislature's use of the terms "accepts" and "acceptance." HB 1259 was enacted in 1971 and at that time, as is true today, parties engaging in construction projects commonly used form contracts drafted and provided by the AIA. *See* J. Charles Sheak and Timothy J. Korzun, *Old Game, New Rules: A Brief Guide to 1987 Changes in the A.I.A. A201, General Conditions of the Contract for Construction*, 8 Constr Law 3 (1988) ("Since their initial publication ***, the construction form documents published by the [AIA] have been adopted and used nationwide ***. [T]hese documents *** form the basic framework upon which parties to construction projects structure their rights and obligations."). In 1971, the AIA form contract defined the date on which construction was substantially complete as the date "certified by the Architect when construction is sufficiently complete, in accordance with the Contract Documents, so the Owner may occupy the Work or designated portion thereof for the use for which it is intended." American Bar Association, *Construction Contract Claims*, app IV, § 8 at 511 (1978) (comparing Paragraph 8.1.3 of the 1970 edition with that provision of the 1976 edition). As described in the AIA contract, the certificate shall state the "responsibilities" of the parties "for maintenance, heat, utilities, and insurance"

and shall be submitted to the owner and contractor for written "acceptance."[8] Thus, the 1970 AIA form contract equated the date on which the construction was sufficiently complete for its intended use and occupancy with the date on which the owner took responsibility for its maintenance.

The legislative history of ORS 12.135 indicates that industry representatives who participated in the drafting of HB 1259 also equated those dates. Industry representatives agreed that the original bill should be amended to provide that "substantial completion" occurs when a "contractee accepts in writing the improvement *** as having reached that state of completion when it may be used or occupied for its intended purpose" and explained that the statute of ultimate repose should accrue at that time because, by giving "written acceptance" of construction, the owner undertook responsibility for the utilities, insurance, maintenance, and repair of the facilities. *See* Tape Recording, House State and Federal Affairs Committee, Subcommittee on Financial Affairs, HB 1259, May 10, 1971, Tape 16, Side 2 (statement of Preston Hiefield, counsel for the Associated General Contractors) ("The person for whom the facilities are built takes over the operation and control of the premises, takes over maintenance and any other alterations or repair."). Thus, the legislature used the terms "accepts" or "acceptance" to mean that the owner received the construction and consented or assented to it as having reached a particular state of completion—completion sufficient for its intended use or occupancy—understanding that that acceptance would, at least under the 1970 AIA form contract, have legal consequences.[9]

---

[8] Paragraph 9.7.1 of the 1970 AIA form contract provided, in part:

"When the Architect on the basis of an inspection determines that the Work is substantially complete, he will then prepare a Certificate of Substantial Completion, which shall establish the Date of Substantial Completion, shall state the responsibilities of the Owner and the Contractor for maintenance, heat, utilities, and insurance, and shall fix the time within which the Contractor shall complete the items listed therein. The Certificate of Substantial Completion shall be submitted to the Owner and the Contractor for their written acceptance of the responsibilities assigned to them in such Certificate."

[9] The parties' contract in this case also is an AIA form contract, and its provisions are substantially similar to the 1970 AIA form contract. Paragraph 9.8.1 of the parties' contract defines "Substantial Completion" as "the stage in the

We are not persuaded that the owner's notice of completion under ORS 87.045 fulfills that same purpose or, more importantly, meets the terms of the statute. By issuing a completion notice under ORS 87.045, an owner indicates that construction is sufficiently complete that liens may be filed. However, the owner does not necessarily "accept" anything, much less take control of and responsibility for the construction. Furthermore, although an owner's issuance of a completion notice indicates that the owner believes, at least for purposes of issuing the notice, that all of the original contractors have "substantially performed their contracts," that is not necessarily an acceptance of the construction as sufficiently complete for its intended use or occupancy. Additional work by the original or subsequent contractors may be necessary for the construction to reach that state.

One additional clue that notice of completion pursuant to ORS 87.045 does not necessarily constitute written acceptance for purposes of ORS 12.135(3) is that subsection (4) of ORS 12.135 defines "abandonment" by reference to ORS 87.045, but does not define "substantial completion" by reference to that statute. Subsection (4) was added to ORS 12.135 in 1991, at the same time that the legislature amended that statute to make the 10-year limitations period run from the date of the abandonment of the construction as well as from the date of its substantial completion. *See* Or Laws 1991, ch 968, § 1. In subsection (4), the legislature provided that property is considered abandoned "on the same date that the improvement is considered abandoned under ORS 87.045." However, the legislature did not similarly refer to ORS 87.045 in defining "substantial completion" in subsection (3) of ORS 12.135. Explicit reference to ORS 87.045 for the purposes of one, but only one, aspect of ORS 12.135

progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use." Paragraph 9.8.2 provides that the architect

"will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which the Contractor shall finish all items on the list accompanying the Certificate. *** The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate."

is a further indication that the legislature did not intend to make the posting of a completion notice pursuant to ORS 87.045 an act that necessarily constitutes written acceptance of construction under ORS 12.135(3).

We conclude that a completion notice pursuant to ORS 87.045 does not necessarily establish that the owner accepts the construction of the improvement as complete for occupation and, therefore, that the posting and filing of that document alone does not establish the date that the 10-year statute of ultimate repose begins to run under ORS 12.135. That does not mean, however, that the only document that can constitute a written acceptance under that statute is an acceptance of the terms of a Certificate of Substantial Completion as provided in a standard AIA contract or that a completion notice under ORS 87.045, when combined with other facts, cannot meet the requirements of ORS 12.135. Evidence that, when considered in its entirety, demonstrates written consent or assent to construction as sufficiently complete for its intended use or occupancy will satisfy the requirements of ORS 12.135.

In this case, defendants argue that, by proving that VIP's had obtained a temporary occupancy permit and opened its hotel to visitors at the time that it posted a written completion notice pursuant to ORS 87.045, defendants proved that the requirements of the first clause of ORS 12.135(3) were satisfied. After all, defendants assert, the notice stated that the hotel "has been completed" and the owner was using and occupying the hotel for its intended purpose on the date that the notice was posted.

Plaintiff responds that the contract between the parties provided for construction in addition to the hotel facility itself (including the construction of a storm drainage system); that that additional work was not complete on February 13, 1997; and that VIP's had not accepted the responsibilities assigned by a Certificate of Substantial Completion by that date. Therefore, plaintiff contends, a factfinder could find that VIP's did not accept or give consent to the construction of the improvement as a whole or even as sufficiently complete for its intended use or occupancy on February 13, 1997.

We agree that the material facts are disputed and that the trial court correctly rejected defendants' argument that they were entitled to summary judgment under the first clause of ORS 12.135(3). Accordingly, we turn to defendants' alternative argument that they are entitled to summary judgment under the second clause of that statute.

ACCEPTANCE OF COMPLETED CONSTRUCTION

Without a written acceptance, the second clause in the definition of "substantial completion" applies: "[I]f there is no such written acceptance, the date of acceptance of the *completed* construction, alteration or repair of such improvement by the contractee" is the date of "substantial completion." ORS 12.135(3) (emphasis added). The Court of Appeals concluded that that second clause identifies a potentially different date than the date referenced in the first clause. *PIH Beaverton*, 254 Or App at 499. The court explained that, when a contractee accepts the construction in writing, the construction may be less than fully complete; it need be only substantially complete. Without a writing, however, a contractee must accept "completed" construction, which, the court reasoned, requires that the construction be fully complete. *Id*. at 496.

Defendants disagree with that analysis. They argue that, in enacting the relevant clauses, the legislature intended to identify not two potentially different dates but two different ways in which a party may prove "substantial completion." Defendants maintain that ORS 12.135(3) provides that construction is substantially complete when it has "reached that state of completion when it may be used or occupied for its intended purpose" and that an owner may accept the construction as substantially complete in either of two ways: in writing or by otherwise demonstrating acceptance of the construction. Defendants argue that the fact that VIP's opened the hotel to visitors on February 13, 1997, demonstrates that it accepted the construction of the hotel as substantially complete on that date, even if it did not do so in writing.

To agree with defendants' interpretation, we would have to conclude that the legislature used the term "completed" construction in the second clause of ORS 12.135(3)

to include construction that is less than fully complete. Defendants agree and contend that the legislature used "completed" in the second clause as a reference to the state of completion described in the first clause—construction that has "reached that state of completion when it may be used or occupied for its intended purpose." For that proposition, defendants point to the legislature's use of the word "such" in the second clause—"completed construction, alteration or repair of *such* improvement"—as referring back to the state of completion described in the first clause. We are not convinced. The word "such" modifies the noun "improvement" and refers back to the improvement described in the first clause—"improvement to real property or any designated portion thereof."

Although it is nevertheless conceivable that the legislature used the word "completed" in the second clause of ORS 12.135(3) to capture in one word the state of completion spelled out more fully in the first clause, the text and context of the statute and its legislative history include many indicators to the contrary. First, the ordinary meaning of the word "complete" is "to bring to an end often into or as if into a finished or perfected state *** to make whole, entire, or perfect: end after satisfying all demands or requirements." *Webster's* at 465. Similarly, the adjectival form of "complete" is defined as "possessing all necessary parts, items, components, or elements: not lacking anything necessary." *Id*. Accordingly, the ordinary meaning of something that has been "completed" is something that has been brought into a finished or perfected state; that is whole, entire, and perfect; that possesses all necessary parts, components, and elements; and that lacks nothing necessary to it. It seems unlikely that the legislature used the word "completed" to describe construction that, although sufficiently complete for occupation, is not in a finished or perfected state.

Second, as originally drafted, HB 1259 differentiated between "substantial completion" and full completion.[10]

---

[10] HB 1259, as first introduced, provided, in part:

"Section 2. (1) An action, whether in contract, tort or otherwise, against a person, arising from such person's work, as a contractor for the construction, alteration or repair of any improvement to real property, shall be commenced within six years after the substantial completion of the improvement

Specifically, the original version of the bill provided that claims must be brought "within six years after the substantial completion of the improvement" or "within six years after the acceptance of the completed improvement by the contractee, whichever is earlier." From that text, it is apparent that the drafters had in mind two potentially different dates: that of substantial completion and that of full completion. The drafters provided that an action would accrue on the "earlier" of the two dates.

Thereafter, Representative Stathos proposed to amend the bill to require that acceptance of substantial completion occur in writing. Those appearing on behalf of the Associated General Contractors (AGC) agreed. Mr. Kalinoski testified that, "when the contractor agrees with the owner that the owner may occupy a part of the building, *** the contractor should be responsible to secure something from the owner saying that he is occupying the building and that would be the beginning" of the limitations period. Tape Recording, House Committee on State and Federal Affairs, Financial Affairs Subcommittee, March 3, 1971, HB 1259, Tape 5, Side 1 (statement of J. R. Kalinoski). However, Mr. Kalinoski also requested the addition of a further amendment allowing contractors "to establish through some other facts *** that things are done." Tape Recording, House Committee on State and Federal Affairs, Financial Affairs Subcommittee, April 9, 1971, HB 1259, Tape 14, Side 2 (statement of J. R. Kalinoski). In discussing that further change, counsel for AGC explained that "the owner's *** acceptance is conditioned on his acknowledgement that [the contractor] has completed [his] work and [has] completed it in accordance with [the owner's] desires and his specifications." Tape Recording, House Committee on State and Federal Affairs, Financial Affairs Subcommittee, May 10, 1971, Tape 16, Side 2 (statement of Preston Hiefield). Thus, those who discussed the bill during the amendment process

---

to real property or within six years after the acceptance of the completed improvement by the contractee, whichever is earlier.

"(2)  For purposes of subsection (1) of this section 'substantial completion' means the date when the contractee accepts the improvement *** as having reached that state of completion when it may be used or occupied for its intended purpose."

apparently continued to distinguish between the date on which an owner takes occupancy of an improvement and accepts it in writing, and the date on which the owner accepts the work as fully complete in accordance with contractual specifications.

After all amendments to the original bill were engrossed, the final version of the bill merged the "written acceptance of substantial completion" with "acceptance of completed construction" into a single section defining "substantial completion"—ORS 12.135(3). However, the progress of the bill from its first draft to its final engrossment reveals that, contrary to defendants' argument that the legislature intended to equate the two events, the legislature intended to differentiate between the date on which a contractee accepts the construction as sufficiently complete for its intended use or occupancy and the date on which a contractee accepts the completed construction. We conclude, as did the Court of Appeals, that to meet the terms of the second clause of ORS 12.135(3), a defendant must establish the date on which the construction was fully complete, not the date on which it was sufficiently complete for its intended use or occupancy.

The summary judgment record in this case gives rise to a material question of fact about whether VIP's accepted the construction that was the subject of the contract between the parties as fully complete by February 13, 1997. On the one hand, evidence in the record shows that VIP's obtained a certificate of temporary occupancy, posted a completion notice, and began accepting guests on February 13, 1997. On the other hand, the record also shows that construction work continued after that date, and the county did not issue the certificate of final occupancy for the hotel until September 24, 1997. The trial court erred in concluding, as a matter of law, that VIP's accepted completed construction on February 13, 1997, and granting summary judgment on that basis.

In summary, defendants failed to establish, as a matter of law, that they were entitled to summary judgment under either the first or the second clause of ORS 12.135(3). We therefore affirm the decision of the Court of Appeals and remand to the circuit court for further proceedings.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.