286 April 24, 2014 No. 25

IN THE SUPREME COURT OF THE
STATE OF OREGON

SUNSET PRESBYTERIAN CHURCH,
an Oregon non-profit corporation,
*Respondent on Review,*

*v.*

BROCKAMP & JAEGER, INC.,
an Oregon non-profit corporation,
*Petitioner on Review,*

*and*

ANDERSON ROOFING, CO.,
an Oregon corporation;
Shupe Roofing, Inc., fka Epuhs, Inc.,
and/or Dial One Shupe Roofing, an Oregon corporation;
Positive Construction, Inc., an inactive Oregon corporation;
Woodburn Masonry, an Oregon corporation;
Sharp & Associates, Inc., an Oregon corporation; and
Portland Sheet Metal Works, Inc., an Oregon corporation,
*Defendants-Respondents,*

*and*

DIVERS WINDOW & DOOR, INC.,
an inactive Oregon corporation, et al;
and The Harver Company, an Oregon corporation,
*Defendants.*

SUNSET PRESBYTERIAN CHURCH,
an Oregon non-profit corporation,
*Respondent on Review,*

*v.*

BROCKAMP & JAEGER, INC.,
an Oregon corporation;
Shupe Roofing, Inc., fka Epuhs, Inc.,
and/or Dial One Shupe Roofing, an Oregon corporation;
Positive Construction, Inc., an inactive Oregon corporation;
Woodburn Masonry, an Oregon corporation;
Sharp & Associates, Inc., an Oregon corporation; and
Portland Sheet Metal Works, Inc., an Oregon corporation,
*Defendants-Respondents,*

*and*

ANDERSON ROOFING, CO.,
an Oregon corporation,
*Petitioner on Review,*
*and*

DIVERS WINDOW & DOOR, INC.,
an inactive Oregon corporation, et al;
and The Harver Company, an Oregon corporation,
*Defendants.*

(CC C091601CV; CA A146006;
SC S061171 (Control), S061185)

En Banc

On review from the Court of Appeals.*

Argued and submitted on January 13, 2014.

Anne Cohen, Smith Freed & Eberhard P.C., Portland, argued the cause and filed the briefs for petitioner on review Brockamp & Jaeger, Inc. With her on the brief was Bruce R. Gilbert.

Michael T. Stone, Brisbee & Stockton, LLC, Hillsboro, argued the cause for petitioner on review Anderson Roofing Co., Inc.

Daniel T. Goldstein, Ball Janik, LLP, Portland, argued the cause and filed the briefs for respondent on review.

Michael J. Vial, Vial Fotheringham, LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

WALTERS, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

––––––––––––––
* Appeal from Washington County Circuit Court, Donald R. Letourneau, Judge. 254 Or App 24, 295 P3d 62 (2012).

**WALTERS, J.**

In this construction defect case, we interpret the meaning of the contractual term "date of substantial completion" and the statutory term "substantial completion" to decide whether defendants were entitled to summary judgment on the basis that plaintiff's tort claims were barred either by the statute of limitations or by the statute of ultimate repose. We conclude that defendants were not entitled to summary judgment, affirm the decision of the Court of Appeals, reverse the judgment of the trial court, and remand to the trial court for further proceedings.

We take the following uncontested facts from the record on summary judgment. Plaintiff Sunset Presbyterian Church contracted with defendant Brockamp & Jaeger to act as its general contractor and build a new church facility. Plaintiff and defendant executed a standard form contract provided by the American Institute of Architects (AIA). Defendant then subcontracted with Anderson Roofing Company (defendant subcontractor) and other subcontractors to perform various specialized construction tasks.[1] Plaintiff did not enter into a contractual relationship with any of the subcontractors.

Construction began in 1998. On February 14, 1999, plaintiff held its first services in the church, and on March 14, 1999, held a dedication ceremony. In May 1999, defendant general contractor issued plaintiff a warranty that extended for one year from February 7, 1999, a date that defendant identified as the "substantial completion date." The county issued a certificate of final occupancy on May 28, 1999, but additional work continued during the summer of 1999, and it was not until November 19, 1999, that the architect issued approval for final payment to defendant.

In early 2009, plaintiff allegedly discovered extensive water damage in the church, and on March 16, 2009, it filed an action asserting tort claims against defendants. Defendant general contractor filed an affirmative defense alleging that, by the terms of the parties' contract, plaintiff's

---

[1] The other subcontractors were joined as defendants, but they did not seek review in this court; we do not discuss them further.

claims accrued on the "date of substantial completion" and were time-barred. Defendant subcontractor, which was not a party to that contract, filed an affirmative defense alleging that plaintiff's claims were barred by the statute of ultimate repose provided in ORS 12.135.[2] Both defendants moved for summary judgment.

The trial court granted defendants' motions and dismissed the case. The Court of Appeals reversed. *Sunset Presbyterian Church v. Brockamp & Jaeger*, 254 Or App 24, 295 P3d 62 (2012). Defendants then petitioned for review. This court granted defendants' petitions and, for purpose of oral argument, consolidated this case with a companion case, *PIH Beaverton, LLC v. Super One, Inc.*, 254 Or App 486, 294 P3d 536 (2013). We begin with the issue presented by defendant general contractor and consider whether it was entitled to judgment as a matter of law.

Generally, for purposes of the statute of limitations, tort claims accrue when the plaintiff knows or should know that an injury has occurred. *See Rice v. Rabb*, 354 Or 721, 725, 320 P3d 554 (2014) (holding that discovery rule applies to tort actions referenced in ORS 12.080 and ORS 12.110). Defendant contends that, in this case, the parties altered, by contract, the date on which plaintiff's claims accrued. For purposes of this opinion only, we will assume that the contractual provision on which defendant relies—Paragraph

---

[2] ORS 12.135 was amended by the legislature in 2009, effective January 1, 2010; those amendments do not affect this case, and we refer to the 2007 version of the statute. *See* Or Laws 2009, ch 715, §§ 1, 3. When plaintiff filed its action, ORS 12.135 (2007) provided, in part:

"(1) An action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property *** shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced within 10 years from substantial completion or abandonment of such construction, alteration or repair of the improvement to real property.

"*****

"(3) For purposes of this section, 'substantial completion' means the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee."

13.7.1.1—could have that effect and turn to an analysis of that provision.[3]

Paragraph 13.7.1.1 provides that claims arising from "acts or failures to act occurring prior to the relevant date of Substantial Completion" of the construction "accrue[]" and "any applicable statute of limitations shall commence to run * * * not later than such *date of Substantial Completion*."[4] (Emphasis added.) Paragraph 9.8.1 defines "Substantial Completion" as "the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use." Paragraph 8.1.3 provides that the "date of Substantial Completion is the date certified by the Architect in accordance with Paragraph 9.8."

Paragraph 9.8.2 includes steps that the contractor, architect, and owner of the property must take before the architect issues a Certificate of Substantial Completion. First, "[w]hen the Contractor considers that the Work * * * is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected." Then, the architect must perform an "inspection" and thereby determine that the "Work or designated portion thereof is substantially complete." At that point, the architect

"will prepare a Certificate of Substantial Completion which shall establish the date of Substantial Completion, shall establish responsibilities of the Owner and Contractor for security, maintenance, heat, utilities, damage to the Work and insurance, and shall fix the time within which

---

[3] Plaintiff and *amicus curiae* Oregon Trial Lawyers Association argue that the accrual clause in Paragraph 13.7.1.1 of the parties' contract cannot have the effect that defendant proposes. Plaintiff argues that the accrual of tort claims in this case remains independent of the parties' contract because the contract did not clearly and unequivocally waive or limit recovery in tort. *Amicus* argues that, under Oregon law, a contract may not function to waive tort claims. We do not reach either argument.

[4] Paragraph 13.7.1.1 provides:

"As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion."

the Contractor shall finish all items on the list accompanying the Certificate. \*\*\* The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate."

Defendant did not include an architect's Certificate of Substantial Completion in the documents that it submitted in support of its motion for summary judgment, nor does it argue that the evidence that it did submit established that such a certificate ever had been issued.[5] Rather, defendant argues that Paragraph 13.7.1.1 should be interpreted to mean that the applicable statute of limitations begins to run when construction is "substantially complete" from a functional standpoint: the point at which construction meets the contractual definition of substantial completion (*i.e.*, is sufficiently complete so the owner can occupy or use it as intended). According to defendant, the date that a Certificate of Substantial Completion is issued is one way to prove that functionality, but it is not the only way. Defendant contends that other evidence, such as the date that the construction is occupied or used for its intended purpose, also may establish the date of substantial completion. In this case, defendant argues, plaintiff occupied and used the church for its intended purposes at some point in 1999. Therefore, defendant submits, the statute of limitations began to run in 1999 and, regardless whether a two-year or a six-year statute of limitations applies, plaintiff's claims are time-barred.[6] Plaintiff did not file its complaint until March 2009, more than 10 years from the date that the church was "substantially complete."

Thus, the parties' arguments focus on different contractual provisions. Defendant argues that plaintiff's claims accrued when construction was "Substantially Complete,"

---

[5] The parties agree that no Certificate of Substantial Completion can be located; we do not know whether that is because no certificate was ever issued.

[6] ORS 12.080 imposes a six-year statute of limitations for actions for injury to any interests of another in real property. ORS 12.110 imposes a two-year statute of limitations for actions for injury to the rights of another not arising on contract and not especially enumerated in chapter 12. We do not decide which of those statutes of limitations is applicable in this case. Defendant general contractor does not argue that the statute of ultimate repose provided in ORS 12.135 bars plaintiff's action.

as that term is defined in Paragraph 9.8.1—"the stage in the progress of the Work when the Work *** is sufficiently complete *** so the Owner can occupy or utilize the Work for its intended use." Plaintiff contends that, under Paragraph 13.7.1.1, its claims accrued on the *date* of Substantial Completion and that the "date of substantial completion" is as defined in Paragraph 8.1.3—when an architect determines that the construction is "substantially complete" and issues a certificate to that effect.

Paragraph 9.8.1 defines "Substantial Completion" as a "stage" in the progress of the work, and Paragraph 8.1.3 defines the "date" of Substantial Completion. The contract does not further define the words "stage" or "date," but the difference in the terms is obvious from their dictionary definitions. The dictionary defines "stage" as "a period or step in a process, activity, or development." *Webster's Third New Int'l Dictionary* 2219 (unabridged ed 2002). The dictionary defines "date" as "the point of time at which a transaction or event takes place or is appointed to take place: a given point of time." *Id.* at 576. Thus, a stage may extend over a period of time, while a date is a specific point in time.

Accordingly, under the terms of the parties' contract, if a contractor were to consider construction fit for occupancy or use on, for example, March 1, any date after March 1 would be a date within the "stage" of Substantial Completion. By the terms of the parties' contract, however, claims do not accrue during the "stage" of Substantial Completion but only on a specific "*date* of Substantial Completion." Paragraph 13.7.1.1 (emphasis added). Paragraph 8.1.3 defines the "date of Substantial Completion" as one date—the "date certified by the Architect in accordance with Paragraph 9.8." Therefore, in our example, the "*date* of Substantial Completion" could only be the specific date after March 1 designated by the architect in the Certificate of Substantial Completion.

We therefore agree with plaintiff that evidence that plaintiff occupied and used the property for its intended purpose beginning sometime in February 1999, and at the latest by March 14, 1999, does not establish the date on which plaintiff's claims accrued under Paragraph 13.7.1.1. Under that provision, plaintiff's claims accrued only on the

date that the architect issued a Certificate of Substantial Completion.

Defendant's complaints about that result are misdirected. Defendant submits that architects are hired by owners and that there may be many reasons why architects may not issue Certificates of Substantial Completion or may do so inaccurately.[7] Therefore, defendant contends, tying accrual to an architect's act will create poor public policy for Oregon. But it is the parties' contract, not otherwise applicable Oregon law, that establishes that accrual date.[8] Parties who enter into contracts choose the policies that they wish to have apply to their transactions, and, as the court said in *Morgan v. State Farm Life Ins. Co.*, 240 Or 113, 117, 400 P2d 223 (1965), "we are not at liberty to create a new contract for the parties." *See* ORS 42.230 (in construing a document, court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted"); *Williams v. RJ Reynolds Tobacco Co.*, 351 Or 368, 379, 271 P3d 103 (2011) (citing statute).

Our decision does not mean, of course, that the construction in this case was never substantially complete—indeed, defendant's work may well have been fully complete at some point in 1999, when final payment was authorized.

_____

[7] Defendant raises the possibility that an architect in bad faith could refuse to supply a Certificate of Substantial Completion, although defendant does not suggest that that occurred in this case. We note that the parties' contract provides for mediation in the event of disputes. S*ee* Paragraph 4.4.1 ("any dispute that may arise under this Agreement will be submitted to a mediator agreed to by both parties as soon as such dispute arises"). We further note that, if a contractor were able to establish that it had taken all possible steps to obtain a Certificate of Substantial Completion but that the architect, acting as the owner's agent, refused to cooperate in the process, the contractual requirement potentially could be deemed satisfied. *See Gilbert v. California Oregon Power Co.*, 223 Or 1, 15-16, 353 P2d 870 (1960) (where one party prevents another from performing under the terms of a contract, the party preventing performance may not avail itself of the failure). That is not the circumstance here, however.

[8] We note that the current version of the AIA standard form contract now leaves the date that the statute of limitations begins to run to state law. *See* The American Institute of Architects, §13.7 AIA Document Commentary A201-2007 General Conditions of the Contract for Construction, Time Limits on Claims, 52 (2007) ("The Owner and Contractor shall commence all claims and causes of action *** within the time period specified by applicable law, but in any case not more than 10 years after the date of Substantial Completion of the Work.").

But without evidence that an architect issued a Certificate of Substantial Completion, defendant cannot rely on Paragraph 13.7.1.1 as establishing the date that plaintiff's claims accrued. Our decision also does not mean that plaintiff had unlimited time within which to bring its action against defendant. Plaintiff was required to bring its action within the statute of limitations or, at the very latest, within the period of ultimate repose provided by ORS 12.135.[9]

We also note, as we did at the outset, that defendant does not argue before this court that the evidence that it adduced in support of its motion for summary judgment was sufficient to establish that the architect in fact issued a Certificate of Substantial Completion, even though it could not be located. In appropriate circumstances, a party's inability to produce a document may not foreclose it from proving its existence. *See, e.g.*, *Pac. States Fire Ins. Co. v. C. Rowan Motor Co.*, 122 Or 665, 670, 260 P 441 (1927) (parol evidence admissible to prove the existence of a document but not its contents or legal efficacy); *President & Trustees of Tualatin Acad. & Pac. Univ. v. Keene*, 59 Or 496, 503, 117 P 424 (1911) (affidavit ascribing to the making and delivery of a mortgage and its loss before being recorded admissible to prove the existence of the mortgage). However, on the record before us, the trial court erred in granting defendant general contractor summary judgment based on Paragraph 13.7.1.1 of the parties' contract.

We now turn to defendant subcontractor's argument that plaintiff's claims are barred by the statute of ultimate repose provided in ORS 12.135. We address a similar argument in *PIH Beaverton, LLC v. Super One, Inc.*, 355 Or 267, ___ P3d ___ (2014), also decided today. In that case, we conclude that, in the absence of a written acceptance, the limitations period of ORS 12.135 begins to run on the date on which the contractee accepts the construction as fully complete, as opposed to accepting the construction as "sufficiently complete for its intended use or occupancy." *Id.* at 284.

---

[9] Plaintiff takes the position that Paragraph 13.7.1.1 does not determine the date that its tort claims accrued. Therefore, plaintiff cannot rely on that paragraph as extending the date of accrual until the date that the architect issues a Certificate of Substantial Completion.

In this case, defendant subcontractor contends that the 10-year limitations period of ORS 12.135 began to run on or before March 14, 1999, when the church held its dedication service. The date of that service is relevant evidence that defendant accepted the construction as fully complete on that date, but that is not the only evidence in the record. Plaintiff offered evidence that construction continued after March 14, that neither the architect nor the owner considered the construction to be complete on that date, and that the county did not issue a certificate of final occupancy until May 28, 1999. Because evidence of the date on which construction was fully complete is contested, the trial court erred in granting summary judgment to defendant subcontractor.

In summary, the trial court erred in granting both defendants' motions for summary judgment.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.