Argued and submitted September 18, 2013, affirmed September 24, 2014, petition for review allowed January 9, 2015 (356 Or 685)

Melissa SHELL,
an individual,
*Plaintiff-Appellant,*

*v.*

THE SCHOLLANDER COMPANIES, INC.,
dba Schollander Development Company,
*Defendant-Respondent.*

THE SCHOLLANDER COMPANIES, INC.,
dba Schollander Development Company,
an Oregon corporation,
*Third Party Plaintiff,*

*v.*

KUSTOM BUILT CONSTRUCTION, LLC,
an Oregon limited liability company;
HL Stucco Systems, Inc., an Oregon corporation;
Newside, Inc., an Oregon corporation;
Westurn Cedar, Inc., an Oregon corporation;
and J & R Gutter Services, Inc., an Oregon corporation,
*Third Party Defendants.*

Washington County Circuit Court
C106480CV; A150509

336 P3d 569

Christopher C. Grady argued the cause for appellant. With him on the briefs were Kevin A. Eike and Aldrich Eike, P.C.

Paul E. Sheely argued the cause for respondent. With him on the brief was Stephen E. Archer.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

**SCHUMAN, S. J.**

This is a construction defect case brought by a homeowner alleging that water intrusion damage resulted from the negligence of defendant, the general contractor who built the house and from whom plaintiff bought it. The trial court granted defendant's motion for summary judgment on the ground that plaintiff did not initiate this action within the 10-year statute of repose required by ORS 12.115, which begins to run from the time of "the act or omission complained of." On appeal, plaintiff argues that the court erred in applying that statute; the correct statute, she maintains, is ORS 12.135, which begins to run at the time of "substantial completion," which, she maintains, occurred later than "the act or omission complained of." In the alternative, she argues that, even if ORS 12.115 is the applicable statute of repose, the court erred in granting summary judgment to defendant, because there are disputed issues of material fact regarding when, exactly, the "act or omission complained of" occurred. We affirm.

We will affirm the trial court's ruling granting defendant's motion for summary judgment if there is no genuine issue of material fact and defendant was entitled to judgment as a matter of law. ORCP 47 C. There is no genuine issue of material fact if, based on the record before the court viewed in a manner most favorable to the non-moving party, here plaintiff, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. *Id.*; *See Jones v. General Motors Corporation*, 325 Or 404, 408, 939 P2d 608 (1997). If there is no issue of material fact in dispute, we review the trial court's ruling for errors of law. *Oregon Southwest, LLC v. Kvaternik*, 214 Or App 404, 413, 164 P3d 1226 (2007), *rev den*, 344 Or 390 (2008).

Here, the relevant facts are undisputed (although, as we explain below, the parties disagree about the characterization of those facts and their legal significance). In 1999, defendant began constructing a house on property it owned in Washington County. At that time, defendant intended to sell the house but had not identified a prospective purchaser of the house and property. However, in May

2000, before defendant finished the house, plaintiff decided to buy it. Before the end of that month, the parties signed a document captioned "Real Estate Sale Agreement," including several "addenda" requiring defendant to replace some already-installed floor coverings (tile and carpet) with ones chosen by plaintiff, to install certain closet doors, to plumb a utility room to accommodate a gas dryer, to conduct a "walk-thru" inspection, and to "remedy deficiencies prior to closing." On June 22, 2000, defendant recorded a Notice of Completion, and the county issued a Certificate of Occupancy seven days later. By that time, the outside shell of the house—that is, the portion of the house that plaintiff alleges was negligently constructed—was substantially completed. Defendant conducted the "walk-through" on July 5, 2000, and two days later, on July 7, agreed to make some minor repairs to the house's stucco. The purchase closed on July 12, 2000. Plaintiff served a Notice of Defect on defendant, pursuant to ORS 701.565, on June 25, 2010.

The dispute centers on which statute of repose applies to these facts. Plaintiff argues in favor of ORS 12.135:

"(1)  An action against a person by a plaintiff who is not a public body, whether in contract, tort or otherwise, arising from the person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof * * * must be commenced before * * *:

"* * * * *

"(b)  Ten years after *substantial completion* or abandonment of the construction, alteration or repair of a residential structure * * *.

"* * * * *

"(4)  For purposes of this section:

"* * * * *

"(b)  'Substantial completion' means the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date

of acceptance of the completed construction, alteration or repair of such improvement by the contractee."

(Emphasis added.) According to plaintiff, "substantial completion" occurred, at the earliest, on June 26, 2000, when she accepted a written warranty from defendant covering construction defects.[1] The action was "commenced," she argues, on June 25, 2010, when she sent a Notice of Defect to defendant; the action, she concludes, was therefore within the limitation period by at least one day.

Defendant, however, argues that the trial court correctly identified ORS 12.115(1) as the applicable statute of repose. That statute provides, "In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the *act or omission complained of.*" (Emphasis added.) According to defendant, the "act or omission complained of" was (allegedly) the negligent construction of the outside shell or envelope of the house, and that action necessarily occurred before the notice of completion, that is, before June 22, 2000. The action was commenced, at the earliest, more than 10 years later, when plaintiff sent defendant a Notice of Defect on June 25, 2010.[2]

---

[1] In addition to arguing that substantial completion occurred upon acceptance of a written warranty, plaintiff's more vigorous argument is that substantial completion occurred on June 29, 2000, when a "Notice of Completion" was filed and recorded in Washington County, or perhaps on July 12, 2000, when the sale of the house closed. We need not decide the precise date of "substantial completion," however, because all of the dates alleged by plaintiff are less than 10 years from the date she cites as the commencement of her action.

[2] The parties agree that filing a Notice of Defect tolls any applicable statute of repose, even when—as here—the contractor does not respond. The parties rely on ORS 701.585(1). We express no opinion on the correctness of the parties' shared position on this unraised issue. The statute provides:

"If an owner sends a contractor, subcontractor or supplier a notice of defect within the time allowed for the owner to commence a court action against that contractor, subcontractor or supplier for a claim described in ORS 701.565, the time for the owner to commence the action shall be extended, notwithstanding any statute of limitation or statute of ultimate repose, until the later of:

"(a) One hundred and twenty days after the owner receives a written response from the contractor, subcontractor or supplier that received the notice of defect if the written response does not contain a written offer to perform remediation or pay monetary compensation for one or more of the defects or incidental damage described in the notice of defect;

"(b) One hundred and twenty days after the owner rejects a written offer by any contractor, subcontractor or supplier to perform remediation or pay

As noted above, the trial court agreed with defendant and granted its motion for summary judgment.[3]

On appeal, the parties initially focus on *Lozano v. Schlesinger*, 191 Or App 400, 84 P3d 816 (2004). In that case, the defendant built a home for himself and lived in it for three years. At that point, he put it on the market and sold it to a third party, who lived in it for five years. The third party then sold it to the plaintiff, who subsequently found what he believed to be construction defects. *Id.* at 402. The plaintiff then initiated an action against the defendant, who argued that the action was time barred by ORS 12.135. The trial court agreed with the defendant and granted his motion for summary judgment. *Id.* at 402-03. We reversed, holding that ORS 12.135 did not apply; we reasoned that, under subparagraph (4)(b), that statute applied only if there is a "contractee," who accepts in writing a completed construction contract, and the plaintiff did not qualify as such a person. *Id.* at 405.

> "The phrasing of the statute * * * suggests that, consistently with the common usage of the term 'contractee,' the statute was intended to apply when the recipient of services under a construction contract accepts in writing the completion of those services.

> "* * * * *

> "[I]t is undisputed that there was no written acceptance of the services of a contractor by a 'contractee' within the meaning of the statute. [The defendant] built his own house and then moved into it. ORS 12.135 does not apply, and the trial court erred in reaching a contrary conclusion."

*Id.* Therefore, "[p]lainly, the targets of the statute are claims that arise out of negligent performance of construction contracts."

---

monetary compensation for one or more of the defects or incidental damage described in the notice of defect; or

"(c) Thirty days after the date specified in an accepted written offer by which the offering contractor, subcontractor or supplier is to complete the remediation or complete payment of monetary compensation for one or more of the defects and any incidental damage described in the notice of defect."

[3] Plaintiff originally named several subcontractors as codefendants. They are no longer parties to this appeal.

Defendant acknowledges that it had a contract with plaintiff; however, it focuses on the court's statements that "the statute was intended to apply when the recipient of services under a *construction* contract," and "the targets of the statute are claims that arise out of negligent performance of *construction* contracts." (Emphasis added.) According to defendant, the contract in this case was not a contract involving construction services; it was a purchase and sale agreement. Citing *Sunset Presbyterian Church v. Brockamp & Jaeger, Inc.*, 254 Or App 24, 32-33, 295 P3d 62 (2012), *rev'd on other grounds*, 355 Or 286, 325 P3d 730 (2014), defendant argues that the legislative history of ORS 12.135 supports its reading of *Lozano*; the court in *Sunset Presbyterian Church* noted that "[t]he proponents of ORS 12.135 told the legislature that the repose period under the statute would run from the date on which a general contractor transfers control of a completed improvement to the person who had contracted *for its construction*." 254 Or App at 32 (citation omitted; emphasis added).

Plaintiff, for her part, also advances arguments derived from *Lozano*. First, she argues that *Lozano* establishes that ORS 12.135 applies to construction defect claims brought by a "contractee," and that she is one. She bases that argument on the fact that she and defendant did, in fact, have a contract, albeit not a construction contract. She asserts that, although *Lozano* uses the term "construction contract," the *type* of contract was not an issue in that case; rather, the issue was only whether a contractor who builds and then occupies a house can be in a "contractor-contractee" relationship with himself. Second, she notes that, by virtue of a 2009 amendment to ORS 12.135, the statute "[a]pplies to an action against a manufacturer, distributor, seller or lessor of a manufactured dwelling * * * or of a prefabricated structure * * *." Or Laws 2009, ch 485, § 3. Thus, she concludes, the application of the statute could not logically be limited to construction contracts.

After plaintiff submitted her opening brief, we decided *PIH Beaverton, LLC v. Super One, Inc.*, 254 Or App 486, 294 P3d 536 (2013), *aff'd*, 355 Or 267, 323 P3d 961 (2014). In a reply brief, plaintiff argues that that case bolsters her reading of *Lozano* and her argument that ORS

12.135 applies to this case. In *PIH Beaverton, LLC*, the plaintiff bought a hotel from its first owner, VIP's, and then, some years later, discovered alleged construction defects. The plaintiff brought an action against the general contractor, Super One, and Super One filed cross-claims and third-party claims for indemnity against two subcontractors. *Id.* at 493-94. The trial court ruled that the plaintiff's claim against the general contractor was barred by ORS 12.135(1), and we agreed, stating simply that ORS 12.135, a statute dealing specifically with construction defect claims, controlled over the more general and earlier statute of repose, ORS 12.115. *Id.* at 495. In a part of the opinion more relevant to this case, we held that ORS 12.135 also applied to the general contractor's indemnity claims against the subcontractors. We observed that

> "the statute contemplates that the ultimate repose period applies to any action 'arising from' certain construction-related activities, regardless of the legal theory that forms the basis for the action. The question posed by this appeal, then, is what it means for an action to 'arise from' the construction-related activities described in ORS 12.135(1)."

*Id.* at 501-02 (emphasis omitted). In concluding that "an action 'arises from' a contract if the contract is 'the specific place of origin or the source of the legal action,'" *id.* at 502 (quoting *Black v. Arizala*, 337 Or 250, 267, 95 P3d 1109 (2004)), we stated that ORS 12.135 "applies to any action, 'in contract, tort or otherwise,' regardless of the type of damages sought, so long as the action arises out of the specified construction-related circumstances [*i.e.*, 'construction, alteration or repair of any improvement to real property,' ORS 12.115(1)]." *Id.* at 504 (emphasis omitted). According to plaintiff, those statements mean that ORS 12.135 "encompasses negligent construction claims regardless of whether the parties entered into a construction contract, sale contract or lease."

   Plaintiff overreads *PIH Beaverton, LLC*. She is correct that ORS 12.135 applies to actions in "contract, tort or otherwise." That much is self-evident from the text. It does not follow that the statute applies to *all* actions in contract, tort or otherwise. By specifying that the statute of repose for such actions begins at "substantial completion,"

and then defining that term to mean "when the *contractee* accepts in writing" the construction, alteration, or repair of premises, the legislature specified that the statute applied to only a subset of actions in contract, tort or otherwise— those that derive from a contractor-contractee relationship. Necessarily, those actions are based on a contract. This conclusion follows from the text of ORS 12.135; plugging in the definition of "substantial completion" from ORS 12.135(4)(b) (in italics below) into the operative provision, ORS 12.135(1), results in a text that provides, "An action against a person by a plaintiff * * * must be commenced before * * * (b) [t]en years after *the date when the contractee accepts in writing the construction* * * *." That text clearly reinforces our opinion in *Lozano*.

So too does the legislative history of ORS 12.135, as we observed in *Lozano*:

"Moreover, as the Oregon Supreme Court explained after reviewing the legislative history of the statute, the enactment of ORS 12.135 'began with the objective of fixing a starting date for applying the statutory time limits to actions *against construction contractors.*' *Securities– Intermountain v. Sunset Fuel*, 289 Or 243, 250, 611 P2d 1158 (1980) (emphasis added). Plainly, the targets of the statute are claims that arise out of negligent performance of construction contracts."

191 Or App at 405. Nothing in *PIH Beaverton, LLC* indicates an intention to modify or overrule *Lozano*. Thus, we not only reject plaintiff's argument that ORS 12.135 can apply to actions that do not involve a contract, we also reiterate what we said in *Lozano*: ORS 12.135 applies to actions that derive from *construction* contracts. The fact that the 2009 legislature amended the statute so that it applies to some actions that do not involve a construction contract would shed light on what the legislature that enacted ORS 12.135 in 1971 intended only if we could conclude that the 2009 amendments were intended to modify the preexisting version. *Fifth Avenue Corp. v. Washington Co*, 282 Or 591, 597-98, 581 P2d 50 (1978) ("[A] presumption exists that amendatory acts do not change the meaning of preexisting language further than is expressly declared or necessarily implied."). Plaintiff has presented us with no evidence, nor have we

found any, that the 2009 amendments to ORS 12.135 were intended to expand the applicability of the statute so as to include any claim arising out of any contract.

Our conclusion that, except (perhaps) in the case of manufactured or prefabricated structures, ORS 12.135 applies only to actions arising out of construction contracts, does not end our inquiry. That is so, because the agreement between the parties in this case contains not only a purchase and sale contract, but, in addenda, agreements supported by consideration that defendant will perform certain construction-related tasks—that is, terms of a construction contract. In particular, defendant promised to remedy construction-related deficiencies prior to closing, to install some "mirrored bypass style" closet doors, to plumb a utility room for gas, and to change vinyl floor coverings to ceramic tiles. These elements of a construction contract, however, do not help plaintiff. Her complaint alleged negligence with respect to "sheathing, framing, trim, weather-resistive barrier ('WRB'), siding, and interior finishes." Under the undisputed facts, all of the alleged incidents of negligence occurred before plaintiff entered into the addenda to the purchase and sale agreement that we have indentified as a construction contract. Put another way, plaintiff's complaint does not allege negligence with respect to inspections, remediation, or any of the other activities that, in the addenda, defendant promised to perform. The court did not err in applying ORS 12.115. That statute governs actions for negligence that are not governed by other laws, and the only other law that plaintiff cites is ORS 12.135, which, we have decided, is not applicable here.

Plaintiff, however, argues that, even under ORS 12.115, her claim was timely. ORS 12.115 bars actions that are commenced more than 10 years from the date of the act or omission complained of. According to plaintiff, the court erred in granting defendant's motion for summary judgment under ORS 12.115 because there are disputed issues of fact as to when the act or omission complained of occurred. Plaintiff points out that defendant had an obligation to ensure that the home met the county building codes, and that the obligation continued through the date of closing on July 12, 2000—a date that was less than 10 years

from the time when plaintiff commenced the action. Also, plaintiff argues, defendant conducted a walk-through less than 10 years from the initiation of the action, and it did so negligently.

Plaintiff's argument cannot withstand well-settled case law. In *Josephs v. Burns & Bear*, 260 Or 493, 491 P2d 203 (1971), *overruled on other grounds by Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), the plaintiff argued that the defendant's duty to build a safe roof continued to exist when the roof collapsed 17 years after being built. In applying ORS 12.115, the court stated:

> "If the statute was intended to be one of ultimate repose, regardless of circumstances, it would follow that the legislature did not intend the statute to be circumvented by allegations that subsequent to the fundamental wrong, a continuing duty existed to rectify the results of such wrong. By this statement we do not intend to prejudge a situation in which an active, continuous relationship between plaintiff and defendant exists from the time of the negligent acts to a time within the period during which an action is permitted."

*Id.* at 501-02. Here, the only "fundamental wrong" that plaintiff alleged in her complaint, that is, negligent construction of the house's shell, occurred outside of the 10 year period, and there was no "continuous relationship between plaintiff and defendant * * * from the time of the negligent acts to a time within the period." As noted above, plaintiff did not allege negligent inspection or a negligently performed walk-through. Thus, at the time of the injurious acts—allegedly negligent construction of the house's shell—there was no relationship between plaintiff and defendant.

The court correctly concluded that ORS 12.135 does not apply to this case and that, on the undisputed facts, ORS 12.115 bars plaintiff's action.

Affirmed.