552 February 19, 2016 No. 2

IN THE SUPREME COURT OF THE
STATE OF OREGON

Melissa SHELL,
an individual,
*Petitioner on Review,*

*v.*

THE SCHOLLANDER COMPANIES, INC.,
dba Schollander Development Company,
*Respondent on Review.*

THE SCHOLLANDER COMPANIES, INC.,
dba Schollander Development Company,
an Oregon corporation,
*Third-Party Plaintiff,*

*v.*

KUSTOM BUILT CONSTRUCTION, LLC,
an Oregon limited liability company;
HL Stucco Systems, Inc., an Oregon corporation;
Newside, Inc., an Oregon corporation;
Western Cedar, Inc., an Oregon corporation; and
J & R Gutter Services, Inc., an Oregon corporation,
*Third-Party Defendants.*

(CC 106480CV; CA A150509; SC S062791)

On review from the Court of Appeals.*

Argued and submitted May 8, 2015.

Daniel T. Goldstein, Ball Janik, LLP, Portland, argued the cause for petitioner on review. Christopher C. Grady, Aldrich Eike, P.C., Portland, filed the brief for petitioner on review. With him on the brief was Kevin A. Eike.

Paul E. Sheely, Smith Freed & Eberhard P.C., Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Jakob Lutkavage-Dvorscak.

_____

* On appeal from Washington County Circuit Court, Donald R. Letourneau, Judge. 265 Or App 624, 336 P3d 569 (2014).

Adele J. Ridenour, Ball Janik LLP, Portland, filed the brief for *amicus curiae* Gerald and Melissa McKee. With her on the brief were Philip E. Joseph and James C. Pritchard.

Christine Moore, Landye Bennett Blumstein LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

KISTLER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

** Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**KISTLER, J.**

The primary question in this construction defect case is which of two statutes of repose applies when a buyer enters into a purchase and sale agreement to buy an existing home. Although each statute provides for a 10-year period of repose, the two periods of repose run from different dates. One runs from "the date of the act or omission complained of." ORS 12.115(1). The other runs from the date that construction is "substantial[ly] complet[e]." ORS 12.135(1)(b). In this case, the trial court found that plaintiff filed her action more than 10 years after "the date of the act or omission complained of" but less than 10 years after the construction was "substantial[ly] complet[e]." The trial court ruled that the first statute, ORS 12.115(1), applied and accordingly entered judgment in defendant's favor. The Court of Appeals affirmed. *Shell v. Schollander Companies, Inc.*, 265 Or App 624, 336 P3d 569 (2014). We allowed plaintiff's petition for review and now affirm the Court of Appeals decision and the trial court's judgment.

Defendant is a general contractor that builds "spec" houses—houses built without preexisting construction contracts in anticipation of eventual sale to the public.[1] Defendant's president explained that his company ordinarily does not sell homes to the public until the homes have been completed. In particularly strong markets, however, defendant has sold homes that are approximately 95 percent complete. On May 30, 2000, defendant and plaintiff entered into a purchase and sale agreement for a house. Although most of the construction had been completed, the agreement specified that defendant would make changes to the interior of the house. Specifically, defendant agreed to upgrade some of the flooring, install an air conditioning unit, and install a gas dryer in the laundry room. After defendant made those changes and the parties conducted a walk-through inspection, the sale closed on July 12, 2000.

More than 10 years after plaintiff entered into the purchase and sale agreement but less than 10 years after

---

[1] Because the trial court ruled in defendant's favor on summary judgment, we state the facts in the light most favorable to plaintiff. *Cocchiara v. Lithia Motors, Inc.*, 353 Or 282, 284, 297 P3d 1277 (2013) (stating standard).

the sale closed, plaintiff filed a complaint against defendant in which she alleged that, as a result of defendant's negligence, some of the exterior elements of her house—the windows, siding, water resistant barrier, and flashing—were defective. In its answer, defendant alleged, as an affirmative defense, that the statute of repose set out in ORS 12.115(1) barred plaintiff's negligence claims.[2] Defendant also filed a motion for summary judgment in which it submitted evidence that all the acts or omissions that gave rise to plaintiff's specifications of negligence occurred before plaintiff signed the purchase and sale agreement on May 30, 2000, and thus more than 10 years before she filed her complaint. It followed, defendant reasoned, that the 10-year statute of repose in ORS 12.115(1) barred plaintiff's negligence claims.

Plaintiff responded that defendant was relying on the wrong statute of repose. In her view, ORS 12.135(1)(b) applied and gave her 10 years from the date of "substantial completion * * * of construction" in which to bring her action. Plaintiff reasoned that, because a reasonable juror could find that the construction of her house was not substantially complete until the sale closed on July 12, 2000, her complaint came within the 10-year period of repose set out in ORS 12.135(1)(b) and thus was timely.

After considering the parties' argument, the trial court ruled that ORS 12.135(1) applies to claims arising from contracts to construct, alter, or repair homes. The trial court concluded that, because plaintiff's claims did not arise out of a contract to construct a home, ORS 12.135(1) did not apply.[3] It ruled instead that ORS 12.115(1) applied. The court also concluded that, because the alleged "acts or omissions" that gave rise to plaintiff's negligence claims occurred before plaintiff entered into the purchase and sale agreement (and thus more than 10 years before she filed her

---

[2] ORS 12.115(1) provides that "[i]n no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

[3] The trial court recognized that ORS 12.135(1) might apply to the changes to the interior of the home that defendant had agreed to make as part of the purchase and sale agreement, on the theory that those claims arose out of an agreement to alter a home. However, plaintiff had not alleged that defendant had been negligent in making those changes.

action), defendant was entitled to summary judgment. The trial court entered judgment accordingly.[4]

The Court of Appeals affirmed. It reasoned that the 10-year period of repose set out in ORS 12.135(1)(b) runs from the date of "substantial completion" of construction. Because the date of "substantial completion" is defined as the date that the "contractee" accepts the construction as complete, the Court of Appeals adhered to its decisions holding that ORS 12.135(1) applies only to claims that "derive from a contractor-contractee relationship." *See Shell*, 265 Or App at 632 (following *Lozano v. Schlesinger*, 191 Or App 400, 84 P3d 816 (2004)). Because plaintiff's construction defect claims did not derive from such a relationship, the court agreed with the trial court that ORS 12.135(1) was inapplicable. It also agreed that ORS 12.115(1) applied and that the alleged acts or omissions that gave rise to plaintiff's negligence claims occurred more than 10 years before plaintiff filed her complaint. *Id.* at 633-34. It accordingly affirmed the trial court's judgment.

We allowed plaintiff's petition for review to consider which of the two statutes of repose applies. On that issue, plaintiff does not argue that ORS 12.115(1) is, by its terms, inapplicable. Rather, she argues that ORS 12.135(1) is the more specific statute and, for that reason, controls. We agree with plaintiff's implicit recognition that ORS 12.115(1) potentially applies to her claims. As noted, that statute provides that "[i]n no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of." ORS 12.115(1). As also noted, plaintiff has alleged that she sustained injuries to her property as a result of defendant's negligence. It follows that plaintiff's claims come within the terms of ORS 12.115(1), which applies to "*any* action for negligent injury to *** property of another." (Emphasis added.)

As we understand plaintiff's argument, it rests on the proposition that ORS 12.135(1)(b) governs a subset of claims to which ORS 12.115(1) otherwise would apply.

---

[4] After plaintiff filed her complaint, defendant filed a series of third-party complaints against various subcontractors who had worked on plaintiff's home. Having granted summary judgment against plaintiff, the trial court dismissed defendant's third-party complaints.

Defendant does not argue otherwise, and we assume that that proposition is correct. The issue, as the parties frame it, is whether plaintiff's claims come within the subset of claims to which ORS 12.135(1)(b) applies.

At first blush, the text of ORS 12.135(1)(b) appears to support plaintiff's position. That subsection provides that an "action against a person * * *, whether in contract, tort, or otherwise, arising from the person having performed the construction, alteration or repair of any improvement to real property * * * must be commenced" within "[t]en years after substantial completion * * * of the construction, alteration, or repair of * * * a residential structure[.]" ORS 12.135(1)(b).[5] If we looked solely at the text of that subsection, it would appear that the statute of repose set out in ORS 12.135(1)(b) applies to negligence claims that arise out of the construction of residential structures and that ORS 12.135(1)(b), being the more specific statute, would apply in this case rather than the general statute of repose for negligent injury to person or property set out in ORS 12.115(1).

As the Court of Appeals observed, however, we cannot look solely at subsection (1) of ORS 12.135 in determining the class of claims to which that statute applies. We also have to consider subsection (4)(b) of that statute, which defines the phrase "substantial completion." *See Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508-09, 98 P3d 1116 (2004) (considering multiple subsections of a notice statute in determining whether the notice given was sufficient). That subsection provides:

> "'Substantial completion' means the date when the contractee accepts in writing the construction, alteration or repair of the improvement to real property or any designated portion thereof as having reached that state of completion when it may be used or occupied for its intended purpose or, if there is no such written acceptance, the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee."

ORS 12.135(4)(b).

---

[5] ORS 12.135(1) sets out three different time periods for commencement of an action "arising from the person having performed the construction, alteration or repair of any improvement to real property." In this case, only the second alternative, set out at subsection(1)(b), is applicable.

The 10-year statute of repose in ORS 12.135(1)(b) runs from the date of "substantial completion" of construction, which the legislature has defined as the date that the "contractee" accepts the construction as complete, in writing or otherwise. A contractee is "a person with whom a contract is made." *Black's Law Dictionary* 350 (8th ed 2004); *see Lozano*, 191 Or App at 404 (explaining that, although "contractee" is not a word of ordinary usage, "it appears to be a quite common expression, particularly in construction contracts; it refers to the recipient of the services of a contractor"). To be sure, the term "contractee," considered in isolation, could refer either to a party to a purchase and sale agreement to buy an existing home or to a party to a construction contract to construct, alter, or repair a home. Each is a "contractee." However, the context in which the legislature used the term "contractee" makes clear that that term refers to a party to a contract to construct, alter, or repair an improvement to real property.

ORS 12.135(4)(b) refers to a contractee's accepting in writing the construction, alteration, or repair of the improvement to real property. Used in that context, the term "contractee" is most naturally understood as referring to a person who entered into a contract to construct, alter, or repair an improvement to real property. Ordinarily, only the person who had entered into such a contract would have reason to accept the contractor's work as "substantial[ly] complet[e]." *See* ORS 12.135(1)(b), (4)(b). Conversely, a party entering into a purchase and sale agreement to buy a home ordinarily would have little or no occasion to accept that home as substantially complete. Typically, a purchase and sale agreement for a home conveys title to both an existing home and the underlying land.

We conclude from the text of ORS 12.135(4)(b) that the term "contractee" refers to a party to a construction contract who accepts, in writing or otherwise, the completed construction, repair, or alteration of an improvement to real property. That limitation is significant because it is only at the point that the contractee—the party to a contract to construct, alter, or repair an improvement to real property—accepts the work as substantially complete that the 10-year statute of repose in ORS 12.135(1)(b) begins

to run. Put differently, if there is no contract to construct, alter, or repair an improvement to real property and thus no "contractee" whose acceptance will trigger the period of repose, ORS 12.135(1)(b) does not apply. Rather, the more general period of respose set out in ORS 12.115 will govern. That much follows from the text of ORS 12.135 alone.

The parties do not identify any relevant context, and we turn to the statute's legislative history. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (describing statutory construction methodology). ORS 12.135 was enacted in 1971 and, since then, has been amended on multiple occasions. That statute, however, has not been amended in a way that affects the definition of "substantial completion" in subsection (4)(b) or the role that "substantial completion" plays in limiting the class of claims to which ORS 12.135(1)(b) applies. Accordingly, we focus solely on the 1971 legislative history.

The impetus for House Bill (HB) 1259 (1971), which is codified as ORS 12.135, came from the Associated General Contractors of America, Inc. (AGCA). AGCA proposed HB 1259 to limit the time in which a contractor could be sued for faulty workmanship or materials. Tape Recording, House State and Federal Affairs Committee, Subcommittee on Financial Affairs, HB 1259, Mar 3, 1971, Tape 4, Side 2 (testimony of J. R. Kalinoski). AGCA's concern, however, was "not about the length of the limitation periods but about fixing the time from which these periods are measured, specifically about claims that might 'arise' from latent defects in construction work long after a potential defendant had completed the work." *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 248-49, 611 P2d 1158 (1979).

To meet that concern, AGCA proposed that the limitations period would run from a fixed date. *See* Tape Recording, House State and Federal Affairs Committee, Subcommittee on Financial Affairs, HB 1259, May 10, 1971, Tape 16, Side 2 (testimony of J.R. Kalinoski) (explaining that the bill provides "a given period of time after completion of construction, rather than *** a time period commencing with an injury or damage that might occur"). As initially drafted, subsection 2(1) of the bill provided that claims

"against a person, arising from such person's work, as a contractor for the construction, alteration or repair of any improvement to real property shall be commenced within six years after the substantial completion of the improvement to real property or within six years after the acceptance of the completed improvement by the contractee, whichever is earlier."

Bill File, HB 1259 § 2(1), Jan 26, 1971 (initial draft). Subsection 2(2) of the initial draft defined "substantial completion" as "the date when the contractee accepts the improvement * * * as having reached the state of completion when it may be used or occupied for its intended purpose." *Id.* § 2(2).

Read together, subsections 2(1) and 2(2) of the initial draft applied to claims against "contractors" for the "construction, alteration or repair of any improvement to real property" and required that those claims be brought within six years of either "substantial completion" of the improvement or "acceptance of the completed improvement by the contractee, whichever is earlier." The bill, as initially drafted, assumed the existence of a contract to construct, alter, or repair an improvement to real property. Moreover, because the events that triggered the period of repose turned on the either the contractor's substantial completion of its work or the contractee's acceptance of that work as complete, the period of repose necessarily applied only in the context of contracts to construct, alter, or repair improvements to real property.

During the first subcommittee hearing in March 1971, a committee member pointed out what AGCA viewed as a drafting error in the bill,[6] and AGCA asked the committee to table the bill so that the error could be corrected. *See* Minutes, House State and Federal Affairs Committee, Subcommittee on Financial Affairs, HB 1259, Mar 9, 1971, 4. The subcommittee agreed to do so and later, in April, moved the bill from the table and returned it to the roll. Minutes, House State and Federal Affairs Committee,

---

[6] As initially drafted, HB 1259 made the statute of repose and the statute of limitations coextensive. It both imposed a six-year period of repose and extended the two-year statute of limitations for negligent construction to six years.

Subcommittee on Financial Affairs, HB 1259, Apr 7, 1971. Over the next two months, the subcommittee made several changes to the bill but did not change the bill's essential structure or purpose.

The subcommittee expanded the bill to apply not only to claims against contractors but also to claims against persons who "furnished the design, planning, surveying, architectural or engineering services for such improvement." Bill File, HB 1259, May 17, 1971, § 2 (House Amendments to Engrossed House Bill). It fixed the drafting error in the initial version of the bill, and it made the period of repose 10 rather than six years. *Id.* Finally, the subcommittee provided that the period of repose would run from "substantial completion of such construction, alteration, or repair" of the improvement, and it defined "substantial completion" as including essentially the same two events that the original bill had identified as triggering the period of respose.[7] *Id.* §§ 2, 3. That is, it defined "substantial completion" as either the date "when the contractee accepts in writing the construction, alteration or repair of the improvement to real property" or, in the absence of a written acceptance, "the date of acceptance of the completed construction, alteration or repair of such improvement by the contractee." *Id.*; see *[PIH Beaverton, LLC v. Super One, Inc.](),* 355 Or 267, 275-84, 323 P3d 961 (2014) (explaining differences between those two events).

In discussing HB 1259, the proponents of the bill described "acceptance of the completed construction \*\*\* by the contractee" entirely in terms of contract specifications:

"Certain specifications are put out \*\*\* and you complete it in accordance with th[ose specifications]. The owner's acceptance is conditioned upon his acknowledgement that you've completed your work and you've completed in accordance with his desires and his specifications. Certainly,

---

[7] As initially drafted, the bill provided that the period of repose would run either from "substantial completion" of the improvement or "acceptance of the completed improvement by the contractee, whichever is earlier." Bill File, HB 1259, Jan 26, 1971, § 2 (initial draft). As amended, the bill provided that the period for repose would run from "substantial completion" and defined "substantial completion" as including essentially those two events. Bill File, HB 1259, May 17, 1971, §§ 2, 3 (House Amendments to Engrossed House Bill).

there should be an obligation on the owner at that time to assure himself in his own mind that it has been completed [in] the way he wants it."

Tape Recording, House Committee on State and Federal Affairs, Subcommittee on Financial Affairs, May 10, 1971, Tape 16, Side 2 (testimony of Preston Hiefield); *see PIH Beaverton, LLC*, 355 Or at 283 (concluding from the quoted comment that the legislature intended that the contractee's "acceptance of completion" under the bill meant acceptance of the work as "fully complete in accordance with contractual specifications").

The proponents took the same course in discussing the alternate event that would trigger the period of repose— the "contractee['s] accept[ance of] the improvement * * * as having reached the state of completion when it may be used or occupied for its intended purpose." For example, in explaining how that method of acceptance would work, they focused on a contract to build a large construction project:

"It's not uncommon at all, especially in school construction, for a school district to occupy * * * part of a building before the contractor is completely finished and in such cases * * * we feel that it's necessary for substantial completion to be determined in limiting the cause of action. The intent of this is to say that when * * * the contractor agrees with the owner that the owner may occupy part of the building that he is constructing, that the contractor should be responsible to secure something from the owner saying that he is occupying the building and that be the beginning of the [period of repose]."

Tape Recording, House Committee on State and Federal Affairs, Subcommittee on Financial Affairs, HB 1259, Mar 3, 1971, Tape 5, Side 1 (testimony of J. R. Kalinoski). *See also* Tape Recording, House Committee on State and Federal Affairs, Subcommittee on Financial Affairs, HB 1259, Apr 9, 1971, Tape 14, Side 2 (testimony of J.R. Kalinoski) (explaining that substantial completion is relevant in construction of school buildings when school district wants to occupy part of the building). As that example illustrates, the legislators understood that the "contractee" to which ORS 12.135(4)(b) referred was the party to a contract to construct a new building.

Other parts of the legislative history similarly indicate that HB 1259 applied to contracts to construct, alter, or repair improvements to real property. For example, one legislator asked whether there was some "certificate of completion" that could serve as definitive evidence of substantial completion, and an AGCA representative explained that there is "an instrument of some kind that says that the project is completed and accepted subject to a provision in the contract," but that such an instrument is "not given in every instance." Tape Recording, House Committee on State and Federal Affairs, Subcommittee on Financial Affairs, HB 1259, Apr 9, 1971, Tape 14, Side 2 (conversation between Representative George F. Cole and J. R. Kalinoski). In *PIH Beaverton LLC*, this court looked to a model contract drafted by the American Institute of Architects to define when a contractee will accept construction "as having reached that stage of completion when it may be used or occupied for its intended purpose." *See* 355 Or at 278-79. That is, the court took from the legislative history that, in referring to the contractee's acceptance of the construction as complete, the legislature was referring to acceptance by a party to a contract to construct, repair, or alter an improvement to real property. The legislative history thus confirms what the text of ORS 12.135 reveals—that the period of repose set out in ORS 12.135(1)(b) applies to claims that derive from contracts to construct, alter, or repair improvements to property.

Plaintiff advances primarily one contrary argument in this court. She agrees that the purpose of ORS 12.135(1) was to provide a date certain from which claims arising out of the construction, alteration, or repair of an improvement to real property would run. She reasons that, because that purpose applies equally whether a builder is constructing a home pursuant to a construction contract or selling an existing home, ORS 12.135(1)(b) should apply to her claims.

We reach a different conclusion for two reasons. First, as discussed above, the text and legislative history of ORS 12.135 reveal that that statute of repose applies only to claims that derive from contracts to construct, alter, or repair an improvement to real property. It is not our job to expand a statute beyond its intended reach, even if the legislature reasonably could have chosen to do so.

Second, the legislature reasonably could have concluded that, for purposes of statutes of repose, "spec" houses present different issues from houses built pursuant to construction contracts. Among other things, "spec" houses may go unsold for years. If plaintiff were correct and if the buyers in an agreement to buy an existing home were "contractees" for the purposes of ORS 12.135(4)(b), then the 10-year statute of repose would not begin to run until the buyer "accepted" the construction as "substantial[ly] complet[e]" by buying it. Not only is it logically difficult to say that the construction of a "spec" house will not be complete until the house is sold years after the contractor finished building it, but plaintiff's interpretation would defeat the certainty that ORS 12.135(1)(b) was intended to provide. Under plaintiff's interpretation, when the statute of repose would begin to run on "spec" houses would turn on the happenstance of the date of sale. We accordingly agree with the Court of Appeals and the trial court that ORS 12.135(1)(b) does not apply to plaintiff's negligence claims. The claims for negligence that plaintiff has alleged do not derive from a contract to construct, alter, or repair an improvement to land.[8] As the trial court and the Court of Appeals correctly held, ORS 12.115(1) applies to plaintiff's negligence claims.[9]

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[8] As the trial court correctly noted, even if the parties' agreement in this case could be viewed as a hybrid agreement—namely, a contract to buy an existing home and a contract to make alterations to the interior of that home, plaintiff's negligence claims did not derive from the interior alterations that defendant agreed to make. Rather, her claims derived from defendant's alleged negligence in constructing the exterior of her house. Because plaintiff's negligence claims did not derive from a contract to construct, alter, or repair an improvement to real property, ORS 12.135(1) did not apply to them.

[9] On review, plaintiff argues alternatively that, even if ORS 12.115(1) applied, there was a genuine issue of material fact that precluded the entry of summary judgment. The arguments that plaintiff has advanced on that issue do not persuade us that the Court of Appeals erred in resolving it.